[No. H033111. Sixth Dist. Sept. 17, 2009.]

EDGARDO GARCIA, Petitioner, v.
THE SUPERIOR COURT OF MONTEREY COUNTY, Respondent,
THE PEOPLE, Real Party in Interest.

804

## Counsel

James S. Egar, Public Defender, and Michelle C. Wouden, Deputy Public Defender, for Petitioner.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Stan Helfman and Sharon G. Birenbaum, Deputy Attorneys General, for Respondent.

No appearance for Real Party in Interest.

## Opinion

**McADAMS, J.**—Petitioner Edgardo Garcia requests the issuance of a writ of mandate directing the trial court to vacate its order denying his motion to set aside count 3 of the information pursuant to Penal Code section 995, and to enter a new order dismissing count 3 of the information.[1] The question presented is whether the trial court erred in granting the People's request to reopen the preliminary hearing, pursuant to section 995a, subdivision (b)(1), for the purpose of permitting the court, sitting as a magistrate, to hear new evidence before ruling on defendant's motion to set aside count 3 of the information, which alleges a felony violation of section 148. We hold that the trial court erred, on these facts, by allowing the prosecutor to present revised testimony in order to fill an evidentiary vacuum concerning the gravamen of the offense. We will therefore issue a peremptory writ of mandate vacating

---

[1] All further unspecified code sections refer to the Penal Code.

the respondent superior court's order denying petitioner's section 995 motion with respect to count 3, and directing respondent court to enter an order dismissing count 3 of the information.

## STATEMENT OF THE CASE AND FACTS

*The Pending Charges*

Petitioner is a defendant in a criminal action currently pending in the superior court. By information, he is charged in Monterey County with the following felony offenses: concealing a firearm on his person (§ 12025, subd. (a)(2), count 1); carrying an unregistered, loaded firearm on his person (§ 12031, subd. (a)(1), count 2); resisting, delaying or obstructing a police officer in the discharge or attempted discharge of his duty (§ 148, subd. (a)(1), count 3); and actively participating in a criminal street gang (§ 186.22, subd. (a), count 4). Counts 1 and 2 include special allegations that defendant, during the commission of the offenses, was an active participant in a criminal street gang; was not the registered owner of the firearm; "knew and reasonably should have known" the firearm was stolen; and committed the offenses for the benefit of, at the direction of, or in association with the Norteño criminal street gang, with the specific intent to promote, further or assist in any criminal conduct by gang members. (§§ 12025, subd. (b)(3), (6), (2), 12031, subd. (a)(2)(B), (C), (F), 186.22, subd. (b)(1).) Count 3 (resisting, etc., arrest) includes the allegation that defendant resisted arrest for the benefit of, at the direction of, or in association with the Norteño criminal street gang. (§ 186.22, subd. (d).)[2]

*Facts Adduced at the Initial Preliminary Hearing[3]*

A preliminary hearing was held on May 9, 2008. Police Officer Salvador Reynaga testified that at around 10:00 p.m. on March 26, 2008, he was on patrol in the City of Seaside with fellow officer Nick Borges, heading eastbound on Olympia, when he noticed a group of four Hispanic men walking south on Noche Buena. As soon as the men saw the officers' police car, they separated. Officer Reynaga, who was the driver, immediately stopped the car and both officers exited. One of the men ran, and Officer Reynaga gave chase. Thus, Officer Reynaga was not in the area when his partner made contact with defendant Garcia.

Narcotics Detective Nick Borges testified that he focused on defendant because he was familiar with defendant from prior police contacts and arrests

---

[2] The gang allegation elevates the misdemeanor charge of resisting arrest to a felony.

[3] This summary includes only evidence that relates to the section 148 charge.

and knew that defendant was a gang affiliate. Borges stayed by the police car and watched defendant, maintaining eye contact with him, as defendant rapidly walked west on Olympia. Detective Borges noticed a bulge protruding near defendant's waistband area; defendant had both hands cupped around the bulge as if he was holding something. Defendant walked behind a green van that was parked on the street. Borges was still able to see defendant's upper body through the van's windows. Defendant's "fast walk came to a complete stop. He was looking at me, seeing where my position was. And I saw him make a tossing motion with his right hand. And exiting from his hand was the silhouette of a dark object that went into the front yard of I believe 1293 Olympia." No one else was in the area. He searched the yard area and found a loaded .32-caliber Deutsche-Werke handgun in a flowerbed. He arrested defendant.

Defendant was wearing gang-related clothing: a red belt with the letter "N" on the belt buckle. He also had a red cellular telephone that had numerous photographs of what Borges believed to be gang indicia. Defendant also sported several gang-related tattoos.

On cross-examination, Detective Borges was asked: "[W]hen you were making contact with these four individuals, had you observed them committing any crime?" He answered "no." Borges agreed it was "a consensual encounter" the purpose of which "was just to make contact with the individuals." He elaborated: "I was concerned. I was suspicious of the fact that they all had dispersed when they saw the police car. That was the trigger for us contacting them." However, while the three other men scattered, defendant continued walking westbound on Olympia, in the direction that he was already going. Nevertheless, "[defendant] was walking not at a normal rate that a person would walk. He was walking rapidly. His eyes were open wide. He was looking directly at me. He had a blank look on his face. And I had contacted him before. And he had never had that look on his face or his eyes opened as wide. And I'd never seen him walking at that rate of speed. And, also, again, he was holding a bulge. All those put together, he appeared to be nervous that the police were getting ready to contact him."

Seaside Officer Dexter Johnson, one of the gang officers for the department, testified that in his opinion defendant "is an active member of the Norteño street gang." He was asked: "Now, Officer Borges described that Mr. Garcia was walking away from him. If you consider that resisting arrest, how does that benefit the gang?" Officer Johnson responded: "Basically the will to get away from the police in possession of a firearm can do nothing but keep that firearm out on the street as it can be traded for other weapons, or it could be used to commit a criminal act against [a] rival gang member or other members within the community."

At the conclusion of the preliminary hearing, defense counsel asked that defendant not be held to answer on the resisting arrest count because "[t]here was no testimony given that Mr. Garcia willfully or unlawfully resisted or delayed a peace officer in the course of his duties." The magistrate responded: "He was walking away from the officer who was approaching, trying to approach him. And that's delaying the officer in the performance of his duties. Isn't it?" The court rejected defense counsel's further argument that an individual has the right to walk away from a consensual encounter and held defendant to answer on all charges.

*The Sections 995 and 995a Motions*

On June 9, 2008, defense counsel filed a motion to dismiss the information pursuant to section 995 on the ground, among others, "that the felony enhanced resisting, obstructing, or delaying a peace officer must be dismissed because there was absolutely no evidence presented that Mr. Garcia in any way resisted, delayed, or obstructed a peace officer in the course of his duties."

On June 16, 2008, the district attorney filed a response to defendant's motion. In it, "[t]he People concede the error of failing to establish the officer gave a command for defendant to stop. The People request the case be remanded to the magistrate to correct the deficiency" pursuant to section 995, subdivision (b)(1). "The People's offer of proof is that if recalled to the stand, Officer Borges would testify similar to the following paragraph in his report. 'I pointed at Garcia and ordered him to stop. Garcia's eyes were opened wide and he ignored my command. He continued to walk at a fast pace. At that time, I walked towards him and he walked behind the green minivan . . . .' [¶] The People believe that the evidence of Officer Borges' observations and his suspicion that defendant was carrying a weapon based on his training and experience and observations, demonstrates he was lawfully performing his duties when he ordered defendant to stop."

On June 20, 2008, the superior court heard argument on the district attorney's request to reopen the preliminary hearing for further testimony by Detective Borges. The court stated that it agreed with the defense that the People "didn't put on the evidence sufficient to hold him to answer to the charge." However, the court considered the blunder "the kind of omission that the statute [§ 995a, subd. (b)(1)] allows for correcting" and granted the district attorney's request to reopen the preliminary hearing. Noting his continuing objection to any "do over" at all, defense counsel agreed with the prosecutor to permit the superior court judge to sit as magistrate for the purpose of reopening the preliminary hearing to take additional evidence from Detective Borges.

On June 24, 2008, the court heard and denied defendant's renewed motion for reconsideration of the court's earlier ruling.

*Facts Adduced at the Reopened Preliminary Hearing*

On June 27, 2008, the court heard Detective Borges's revised testimony, as follows.

"[PROSECUTOR]: Officer Borges, you've previously testified in this matter; is that correct?

"[OFFICER BORGES]: Yes.

"[PROSECUTOR]: And without going through all of the facts, I just need to ask you one question. Which is you've previously described seeing Mr. Garcia and recognizing him; is that correct?

"[OFFICER BORGES]: Yes.

"[PROSECUTOR]: Did you say anything to him at that point?

"[OFFICER BORGES]: Yes.

"[DEFENSE COUNSEL]: Object[ion]. . . .

"[PROSECUTOR]: When you were still at your patrol car, I believe that's when you said you saw [defendant]?

"[OFFICER BORGES]: Yes.

"[PROSECUTOR]: What was he doing at that point?

"[OFFICER BORGES]: He was walking west on Olympia.

"[PROSECUTOR]: That's when you saw him with his hands down at his waist?

"[OFFICER BORGES]: Yes.

"[PROSECUTOR]: And what did you do?

"[OFFICER BORGES]: I exited and started walking towards him.

"[PROSECUTOR]: And did you say anything?

"[OFFICER BORGES]: Yes, I did.

"[PROSECUTOR]: What was that?

"[OFFICER BORGES]: I believe I pointed at him and told him to stop.

"[PROSECUTOR]: And when you did that, did you see any reaction from him?

"[OFFICER BORGES]: Yes.

"[PROSECUTOR]: What was that?

"[OFFICER BORGES]: I remember his eyes open wide. He ignored me and continued to walk west towards a green minivan.

"[PROSECUTOR]: So when you say 'his eyes open wide,' that means he was looking at you when you made the command?

"[OFFICER BORGES]: I believe he was.

"[PROSECUTOR]: Nothing further.

"[THE COURT]: Cross?

"[DEFENSE COUNSEL]: Thank you. You previously testified that yours and Officer Reynaga's intention was to make contact with individuals in what you termed a consensual encounter, correct?

"[OFFICER BORGES]: Yes.

"[DEFENSE COUNSEL]: At the time you entered your patrol vehicle and walking [*sic*] towards Mr. Garcia, your intention was still to make contact with them in what you determined to be a consensual encounter?

"[OFFICER BORGES]: Yes.

"[DEFENSE COUNSEL]: So at that time that you stated to him to stop, you had not observed him committing any crime?

"[OFFICER BORGES]: That time the reason why I did that is because I believed he had a weapon on him.

"[DEFENSE COUNSEL]: You did not know if he had a weapon on him?

"[OFFICER BORGES]: No.

"[DEFENSE COUNSEL]: You had not seen a weapon?

"[OFFICER BORGES]: No.

"[DEFENSE COUNSEL]: You had no idea if the bulge that he was holding was a ball?

"[OFFICER BORGES]: I had no idea. I suspected it was a gun or a weapon.

"[DEFENSE COUNSEL]: But you did not know what it was?

"[OFFICER BORGES]: No, ma'am.

"[DEFENSE COUNSEL]: But your intention at that point still was to talk to him in a consensual encounter?

"[OFFICER BORGES]: Initially it was. But based on his demeanor after I exited the car, I was trying to detain him.

"[DEFENSE COUNSEL]: And he was walking the same direction as when the patrol vehicle initially stopped?

"[OFFICER BORGES]: Yes.

"[DEFENSE COUNSEL]: So he did not walk in a different direction?

"[OFFICER BORGES]: No.

"[DEFENSE COUNSEL]: From the way he was heading?

"[OFFICER BORGES]: Correct.

"[DEFENSE COUNSEL]: And you stated to him, as he was walking behind the green minivan, to stop?

"[OFFICER BORGES]: As he was walking in the direction of the minivan, yes.

"[DEFENSE COUNSEL]: And you recall testifying previously in the same matter?

"[OFFICER BORGES]: Yes.

"[DEFENSE COUNSEL]: You made no statement regarding the fact that you suspected that he may have a weapon on him?

"[OFFICER BORGES]: I don't remember if I testified that [*sic*]. I know it's in my police report.

"[DEFENSE COUNSEL]: But you don't recall testifying to that at the initial hearing?

"[OFFICER BORGES]: I don't remember the exact testimony."

The superior court held defendant to answer, finding that "[i]f it was going to be a consensual contact, then I would not hold him to answer. But it went from a consensual contact initially to one that was, as the officer said, was going to be a detention."

## DISCUSSION

### *The Statute*

Section 995a, subdivision (b)(1) states: "Without setting aside the information, the court *may*, upon motion of the prosecuting attorney, order further proceedings to correct errors alleged by the defendant *if the court finds that such errors are minor errors of omission, ambiguity, or technical defect which can be expeditiously cured or corrected without a rehearing of a substantial portion of the evidence.* The court *may* remand the cause to the committing magistrate for further proceedings, or if the parties and the court agree, the court *may* itself sit as a magistrate and conduct further proceedings. When remanding the cause to the committing magistrate, the court *shall* state in its remand order which minor errors it finds could be expeditiously cured or corrected." (Italics added.)

### *The Standard of Review*

■ Interpretation of a statute is a question of law subject to de novo review. (*Estate of Joseph* (1998) 17 Cal.4th 203, 216–217 [70 Cal.Rptr.2d 619, 949 P.2d 472].) "A statute is to be construed so as to give effect to the intention of the Legislature. [Citations.] To do so, ' "[t]he court turns first to the words [of the statute] themselves for the answer." [Citation.]' [Citation.] The statutory language used is to be given its usual, ordinary meaning and, where possible, significance should be given to every word and phrase." (*In re Rudy L.* (1994) 29 Cal.App.4th 1007, 1010 [34 Cal.Rptr.2d 864].)

■ Section 995a, subdivision (b)(1) provides that the court *may* order further proceedings, but only *if* certain findings are made. If those findings are made, the court *may* then remand the cause to the committing magistrate, or it *may* sit as magistrate. When the court chooses remand it *shall* state its findings. ■ It is a well-settled principle of statutory construction that the word "may" in a statute is ordinarily deemed permissive, and the word "shall" is deemed mandatory. (*California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1143 [43 Cal.Rptr.2d 693, 899 P.2d 79].)

■ Applying these customary rules of statutory construction here, we find that section 995a, subdivision (b)(1) is reasonably understood as giving the court *discretion* to order further proceedings instead of setting aside an information, but only if the following statutory prerequisites are met: (1) the prosecuting attorney requests corrective action; (2) the errors alleged by the defendant are minor ones of omission, ambiguity or technical defect; and (3) the errors can be expeditiously cured or corrected without the rehearing of a substantial portion of the evidence.

Therefore, in this case, we first interpret the statute to determine what the Legislature intended by the phrase "minor errors of omission, ambiguity, or technical defect which can be expeditiously cured or corrected . . ."; we then examine the trial court's express and implied findings to see if they are supported by substantial evidence; and we review the trial court's decision to order additional proceedings for abuse of discretion. (§ 995a, subd. (b)(1).) Having reviewed the entire record for substantial evidence, and for the reasons discussed below, we conclude the trial court erred in finding that there was a minor and expeditiously curable omission in this case, because the preliminary hearing transcript is devoid of any evidence establishing the core conduct, or actus reus, of resisting arrest.

*Analysis*

For our purposes, *Loverde v. Superior Court* (1984) 162 Cal.App.3d 102 [208 Cal.Rptr. 134] (*Loverde*) provides the first important gloss on the meaning of "minor errors of omission [or] ambiguity" in section 995a, subdivision (b)(1). In that case, the magistrate denied a motion to suppress evidence on the basis of the inevitable discovery doctrine and the defendant moved in superior court to set aside the information pursuant to section 995 on the ground that the magistrate should have granted the suppression motion. At the hearing on the section 995 motion, the district attorney conceded that the magistrate's reliance on inevitable discovery was erroneous, but argued that the ruling on the suppression motion could be salvaged if the matter were remanded under section 995a, subdivision (b)(1) for clarification of "an ambiguity" in the magistrate's ruling on knock-notice grounds.

(*Loverde*, at p. 104.) The superior court agreed, and remanded the matter to the magistrate for findings on a witness's credibility. (*Id.* at p. 105.) The Court of Appeal reversed, finding that there was no "error of omission correctable on remand," and further finding that "[a]ny claimed ambiguity lies in the magistrate's failure to articulate factual findings and legal reasoning in concluding the entry was illegal. That ambiguity, if any, *goes to the very heart of the case and can hardly be characterized as minor.*" (*Id.* at p. 105, italics added.)

*Caple v. Superior Court* (1987) 195 Cal.App.3d 594 [241 Cal.Rptr. 735] (*Caple*) is the seminal case construing "minor errors of omission" under section 995a, subdivision (b)(1) in a factual context similar to the one before us. *Caple* teaches that section 995a, subdivision (b) was added in 1982 apparently in response to the California Supreme Court's opinion in *Burnett v. Superior Court* (1974) 12 Cal.3d 865 [117 Cal.Rptr. 556, 528 P.2d 372] (*Burnett*). In *Burnett*, our high court decided that the superior court was required to grant or deny the defendant's motion to dismiss the information pursuant to section 995, because there was no statutory authority giving the court "discretion to remand the cause to the magistrate in lieu of making an order setting aside the information if, in the court's opinion, the receipt of further testimony at a reconvened preliminary hearing would avoid the necessity of refiling a complaint and initiating a new prosecution." (*Burnett*, at p. 868.) The *Burnett* court found that under then existing statutes, a cause could be resubmitted to the magistrate only "for the purpose of correcting a procedural irregularity or to correct an inadvertence which is clerical in nature." (*Id.* at p. 872.) As examples of such irregularities the court cited two cases in which a phrase describing the offense had been left off the charging document. (*Ibid.*) The court made clear that such a remand was not available "for the purpose of affording the People an opportunity to bolster the record so that probable cause for commitment might be more clearly demonstrated, thus preserving the challenged information." (*Id.* at p. 871.) Any error in holding the defendant to answer on the evidence adduced at the preliminary hearing "was judicial error which was properly challenged on the motion made before respondent court to set aside the information." (*Id.* at p. 873.) Permitting the magistrate "to receive additional testimony in an effort to bolster the People's case before the commitment is tested by a hearing on a motion under section 995, . . . would, in effect, empower him to correct his own judicial error." (*Ibid.*) The court expressed no views on the merits of the defendant's challenge to the information (*id.* at p. 873, fn. 7), and suggested that the People's policy arguments in favor of the challenged procedure were "more properly addressed to the Legislature" (*id.* at p. 874).

The *Caple* court noted that at the time *Burnett* was decided, former section 1387 imposed no limit on the number of times dismissed felony charges could be refiled. (*Caple, supra*, 195 Cal.App.3d at p. 600.) However, in 1980,

section 1387 was amended to prevent the refiling of a felony charge twice dismissed pursuant to section 995. (*Caple*, at p. 600 & fn. 5.)

As originally introduced, the bill to authorize a remand procedure would have given the superior court the discretion to remand the cause to the magistrate for further proceedings " 'if the court finds that the errors alleged by defendant could be expeditiously cured or corrected by further proceedings.' " (*Caple, supra*, 195 Cal.App.3d at p. 601, fn. 6.) However, as finally enacted, the bill's "amendments (1) moved the remand provision from section 995 to section 995a"; (2) permitted remand only " 'upon motion of the prosecuting attorney' "; (3) limited the remedy to " 'minor errors of omission, ambiguity, or technical defect which can be expeditiously cured or corrected without a rehearing of a substantial portion of the evidence' "; (4) permitted the superior court itself to " 'sit as a magistrate' " for the purpose of the further proceedings only if the parties agree; (5) required that the superior court, upon remanding to the original magistrate, state the perceived " 'minor errors' " in the remand order; (6) permitted recourse to the correction procedure only once with respect to any information; (7) provided that the correction proceedings should not be deemed to extend the time within which a defendant must be brought to trial under section 1382; (8) required that the superior court reserve its final ruling on the motion to set aside the information until the correction proceedings were completed; and (9) anticipated writ review if " 'the [superior] court abused its discretion in utilizing the procedure set out in subdivision (b) of section 995a . . . .' " (*Caple*, at p. 601, fn. 6.) The *Caple* court concluded that the provisions of section 995a, subdivision (b) "changed, to some extent, the holding of *Burnett*." (*Caple*, at p. 601.)

■ The *Caple* court also concluded that "[b]efore a trial court may institute further proceedings to correct preliminary hearing errors, section 995a requires it make two separate findings: (1) a minor error of omission, ambiguity or technical defect which, (2) can be expeditiously cured." (*Caple, supra*, 195 Cal.App.3d at p. 601.) Finding the statutory term "minor" to be ambiguous, the Court of Appeal rejected defendant Caple's argument that the term referred to an omission that was "minor in the sense of insignificant. [¶] . . . That is, any omission which causes an information to fail must be regarded as significant and major and therefore, not minor. This analysis begs the question by gauging the magnitude of the defect by its effect on the prosecution's case. Adoption of such a definition would totally eviscerate section 995a, subdivision (b)(1), by permitting its use only when the omitted evidence was unnecessary in the first instance. Clearly, the Legislature did not intend the section to be so limited; application of Caple's reasoning renders enactment of the section an idle act." (*Id.* at pp. 601–602.) Perceiving a legislative intent "that meritorious prosecutions not be barred based upon minor omissions," the *Caple* court construed a "minor omission" as "one that

is *comparatively* unimportant. Thus, an evidentiary defect will trigger the remand provisions of section 995a, subdivision (b)(1), whenever the omission is minor when considered in relation to the balance of the evidence required in order to hold the accused to answer." (*Id.* at p. 602.)

The Court of Appeal then applied its construction to the following facts. Caple and a codefendant were charged with various drug charges arising out of their detention in a car for failure to wear seatbelts. Caple was the car's passenger. While issuing tickets for the seatbelt offenses, the arresting officer smelled the odor of marijuana emanating from the car, observed a half-burnt marijuana cigarette in the dashboard ashtray, and found a very large quantity of cocaine under some papers behind the driver's bucket seat during a consensual search of the car. (*Caple, supra,* 195 Cal.App.3d at p. 597.) At the first preliminary hearing, the arresting officer testified that the car's registration did not show either defendant's ownership of the car, but Caple had admitted that the car belonged to him. (*Ibid.*) At the conclusion of the hearing, the magistrate dismissed the complaint because the prosecution failed to show that the cocaine found in the car was the same cocaine that had been analyzed. The prosecution then refiled the charges.

At the second preliminary hearing, the arresting officer again testified about the half-burnt marijuana cigarette and identified defendant Caple as sitting within one and one-half feet of the cocaine, but he neglected to mention the seatbelt citation, the odor of marijuana, the consent to search, or Caple's spontaneous admission of car ownership. (*Caple, supra,* 195 Cal.App.3d at pp. 597–598.) At the close of this preliminary hearing, defendant Caple moved for dismissal of the complaint on the ground that the prosecution had failed to establish the defendant's possession or knowledge of the cocaine. The magistrate held the defendant to answer and defendant Caple filed a motion to dismiss pursuant to section 995 on the same ground. The superior court agreed with the defense that the evidence showed no connection between the defendant and the contraband. Pursuant to section 995a, the prosecutor requested an opportunity to reopen the preliminary hearing in order to present very brief testimony by the arresting officer. The court remanded the matter to the magistrate " 'to correct errors . . . which consist of omission of any evidence that connects [Caple] to the contraband, other than his presence in the vehicle.' " (*Caple,* at p. 599.) On remand, the arresting officer testified to defendant Caple's admission of ownership of the car; the matter was returned to superior court, whereupon the court denied defendant Caple's section 995 motion. (195 Cal.App.3d at p. 599.)

The *Caple* court first determined that the prosecution's failure to elicit evidence of the defendant's admission of ownership was an omission rather than an evidentiary ruling, which would not be subject to remand under the

statute. Next, the court noted that the quantum of evidence needed to support a holding order and an arrest is essentially the same, that is, probable cause; and that access to or possession of contraband provides probable cause. In addition, knowledge of the presence of the contraband as well as its narcotic character must be shown, but these elements may be established by circumstantial evidence. (*Caple, supra,* 195 Cal.App.3d at p. 602.) The Court of Appeal concluded that the evidence presented about Caple's access to the cocaine provided the "great bulk of the required proof in this case," and that the presence of the half-burnt marijuana cigarette was evidence from which the magistrate was entitled to infer the defendant's knowledge of the narcotic character of the cocaine. (*Id.* at p. 603.) Thus, the *Caple* court concluded that "the evidence already in the record at the time of the trial court's remand order provided most, if not all, of the evidence needed to hold Caple to answer for the charged offenses," and Caple's admission of the car's ownership, "in relation to the joined effect of access and presence of the marijuana cigarette, is comparatively unimportant." Thus, omission of that evidence was minor within the meaning of the statute. (*Ibid.*) Further, since the omission required "only one additional question and answer, it did not involve a rehearing of any of the preliminary hearing evidence." (*Ibid.*) Both prongs of the statute having been met, the Court of Appeal concluded that the trial court had acted properly in remanding the matter for the taking of additional evidence. (*Id.* at p. 604.)

We apply *Caple*'s analytical method to the facts before us but, for the reasons we explain below, it leads us to a different conclusion. We agree that the prosecution's failure to elicit evidence of Detective Borges's command to stop was an omission that comes within the statutory language, but we cannot agree that it was minor, as *Caple* and *Loverde* defined that term.

█ To prevail on a motion to dismiss made pursuant to section 995, "a defendant must show that, in light of the evidence presented to the grand jury or the magistrate, he or she was indicted or committed 'without reasonable or probable cause' to believe that he or she was guilty . . ." of the charged crime. (*People v. Mower* (2002) 28 Cal.4th 457, 473 [122 Cal.Rptr.2d 326, 49 P.3d 1067].) " ' " 'Reasonable or probable cause' means such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of the guilt of the accused. 'Reasonable and probable cause' may exist although there may be some room for doubt." ' " (*Ibid.*) █ The elements of a violation of section 148, subdivision (a)(1) are the following: " ' "(1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties." ' " (*Yount v. City of Sacramento* (2008) 43 Cal.4th 885, 894–895 [76 Cal.Rptr.3d 787, 183 P.3d 471].) However, "it is no

crime in this state to nonviolently resist the unlawful action of police officers." (*In re Michael V.* (1974) 10 Cal.3d 676, 681 [111 Cal.Rptr. 681, 517 P.2d 1145].) Thus, "[b]efore a person can be convicted of [a violation of section 148, subdivision (a)] there must be proof beyond a reasonable doubt that the officer was acting lawfully at the time the offense against him was committed." (*In re Joseph F.* (2000) 85 Cal.App.4th 975, 982 [102 Cal.Rptr.2d 641].) " 'The rule flows from the premise that because an officer has no duty to take illegal action, he or she is not engaged in "duties," for purposes of an offense defined in such terms, if the officer's conduct is unlawful. . . .' " (*In re Manuel G.* (1997) 16 Cal.4th 805, 815 [66 Cal.Rptr.2d 701, 941 P.2d 880]; see *People v. Cruz* (2008) 44 Cal.4th 636, 673 [80 Cal.Rptr.3d 126, 187 P.3d 970] ["it is also a 'well-established rule that when a statute makes it a crime to commit any act against a peace officer engaged in the performance of his or her duties, part of the corpus delicti of the offense is that the officer was acting lawfully at the time the offense was committed' "].) "Under California law, an officer is not lawfully performing her duties when she *detains an individual without reasonable suspicion* or arrests an individual without probable cause." (*Nuno v. County of San Bernardino* (C.D.Cal. 1999) 58 F.Supp.2d 1127, 1134, italics added.)

In this case, Detective Borges's testimony at the first preliminary hearing contained facts from which the magistrate could have inferred that the officer was lawfully performing his duties, and that defendant knew or should have known that he was a peace officer performing his duties, but it failed to include any facts from which the magistrate could have inferred the actus reus—that is, any act, on defendant's part, that constituted the willful resistance, delay or obstruction of an officer in the performance of those duties. Detective Borges saw defendant walking down the street with three other men. The other men dispersed, but defendant kept walking in the same direction. Detective Borges recognized defendant as a gang associate, and saw him holding a bulge at his waistband. He did not see the men committing a crime, but his suspicions were aroused by the circumstances. "I was concerned. I was suspicious of the fact that they all had dispersed when they saw the police car. That was the trigger for us contacting them." Detective Borges observed defendant, through the window of the green van, throw an object into a front yard. Having determined the object was a gun, he proceeded to arrest defendant for its possession.

■ "Police contacts with individuals may be placed into three broad categories ranging from the least intrusive to the most intrusive: consensual encounters that result in no restraint of liberty whatsoever; detentions, which are seizures of an individual that are strictly limited in duration, scope, and purpose; and formal arrests or comparable restraints on an individual's liberty. [Citations.] . . . Consensual encounters do not trigger Fourth Amendment scrutiny. [Citation.] Unlike detentions, they require no articulable

suspicion that the person has committed or is about to commit a crime. [Citation.] [¶] The United States Supreme Court has made it clear that a detention does not occur when a police officer merely approaches an individual on the street and asks a few questions. [Citation.] As long as a reasonable person would feel free to disregard the police and go about his or her business, the encounter is consensual and no reasonable suspicion is required on the part of the officer. Only when the officer, by means of physical force or show of authority, in some manner restrains the individual's liberty, does a seizure occur." (*In re Manuel G., supra,* 16 Cal.4th at p. 821; see *Wilson v. Superior Court* (1983) 34 Cal.3d 777 [195 Cal.Rptr. 671, 670 P.2d 325]; *Florida v. Bostick* (1991) 501 U.S. 429 [115 L.Ed.2d 389, 111 S.Ct. 2382].)

■ In response to defendant's section 995 motion, the prosecution abandoned the magistrate's theory that defendant resisted arrest when he continued to walk away from the officer's attempt to make contact with him, and essentially conceded the correctness of defendant's position that the holding order was not supported by probable cause to believe that defendant had resisted arrest: "The People concede the error of failing to establish the officer gave a command for defendant to stop. The People request the case be remanded to the magistrate to correct the deficiency." Defendant's refusal to heed the officer's command to stop filled the evidentiary vacuum concerning the act of resisting; it also raised questions about the lawfulness of the officer's order to stop. A detention is justified "when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231 [36 Cal.Rptr.2d 569, 885 P.2d 982]; see *In re Tony C.* (1978) 21 Cal.3d 888, 893 [148 Cal.Rptr. 366, 582 P.2d 957], superseded on other grounds by Cal. Const., art. I, § 28.)

The prosecution's offer of proof also proposed additional testimony to establish a lawful detention: "The People believe that the evidence of Officer Borges' observations and his suspicion that defendant was carrying a weapon based on his training and experience and observations, demonstrates he was lawfully performing his duties when he ordered defendant to stop." In his prior testimony, Detective Borges identified the facts that led him to initiate contact with defendant: four men, one a known gang associate holding a bulge at his waistband, walking together and then dispersing upon espying a police cruiser. At the remand hearing, Detective Borges clarified that as he exited his patrol car and walked towards defendant, he intended to initiate a consensual encounter, but that he told defendant to stop because he believed defendant had a weapon on him. "I had no idea [if the bulge was a ball]. I suspected it was a gun or a weapon." "[B]ased on his demeanor after I exited

the car, I was trying to detain him." Officer Borges told defendant to stop "[a]s he was walking in the direction of the minivan."

The original testimony contained no facts from which the magistrate could have inferred that (1) defendant was subject to a lawful detention, (2) the officer made an attempt to detain defendant, and (3) defendant ignored or evaded the officer's attempt to lawfully detain him. By contrast, Detective Borges's testimony at the remand hearing contained facts from which the magistrate could infer that (1) he attempted to detain defendant, (2) the detention was lawful, and (3) defendant did some act that constituted willful resistance, delay or obstruction of a lawful order of detention. Thus, although the testimony was relatively short, it involved more than one question and answer to establish that Officer Borges said "stop." It necessarily involved testimony to establish the lawfulness of the officer's order, and defendant's resistance to that order—in short, the core conduct, or actus reus, of the offense of resisting arrest. Together, the new testimony about the lawfulness of the officer's order, and defendant's act in defiance of it, went "to the very heart of the case and can hardly be characterized as minor." (*Loverde, supra,* 162 Cal.App.3d at p. 105.)

In this respect, defendant's case is not similar to Caple's, where "the evidence already in the record at the time of the trial court's remand order provided most, if not all, of the evidence needed to hold Caple to answer for the charged offenses." (*Caple, supra,* 195 Cal.App.3d at p. 603.) Under those circumstances, the *Caple* court determined that the defendant's admission of the car's ownership "did not involve a substantial rehearing of evidence, and, even assuming the omission prevented a finding of probable cause, *did not go to the heart of the case* because Caple's access to the cocaine and the presence of the marijuana cigarette already provided circumstantial evidence of each element of the charged offenses." (*Id.* at pp. 604–605, italics added.)

Here, we cannot make the same finding that Detective Borges's revised testimony was comparatively unimportant in relation to his prior testimony, which did not show any basis for a lawful detention, or any act by defendant in defiance of a lawful order. Also, unlike *Caple*, the omission here did not require "only one additional question and answer," and *did* involve an almost total rehearing of Detective Borges's preliminary hearing testimony regarding the resisting arrest charge. (*Caple, supra,* 195 Cal.App.3d at p. 603.) Thus, in this case, unlike in *Caple*, neither prong of section 995a, subdivision (b)(1), was met. Therefore, the trial court erred in remanding the matter for the taking of additional evidence. Accordingly, we will issue a peremptory writ of mandate.

## DISPOSITION

Let a peremptory writ of mandate issue directing respondent court to vacate its order denying petitioner's section 995 motion to set aside the information with respect to count 3, and to enter a new order granting the motion and setting aside count 3 of the information. This opinion is made final as to this court within seven days from the date of filing. (Cal. Rules of Court, rule 8.264(b)(3).) The temporary stay order issued July 17, 2008, is vacated.

Bamattre-Manoukian, Acting P. J., and Mihara, J., concurred.