Filed 2/22/16  In re J.M. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re J. M., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>J. M.,<br><br>    Defendant and Appellant. | G050877<br><br>(Super. Ct. No. DL034305)<br><br>O P I N I O N |

            Appeal from a judgment of the Superior Court of Orange County, Lewis W. Clapp, Judge.  Affirmed and remanded with directions.

            Frank J. Torrano, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Senior Assistant Attorney General, Charles C. Ragland and Kimberley A. Donohue, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

The People filed a juvenile wardship petition against minor J. M. (Minor) alleging one misdemeanor count of resisting, delaying, or obstructing a public officer. (Pen. Code, § 148, subd. (a)(1).)  The court found the allegations to be true and imposed non-ward probation for six months pursuant to Welfare and Institutions Code section 725.

On appeal, Minor contends the evidence does not support the allegations because the officer had no reasonable suspicion to detain Minor, and thus he was not acting in the lawful discharge of his duties.  We conclude there were sufficient articulable facts to amount to reasonable suspicion.

Minor also contends that a probation condition prohibiting him from visiting campuses of schools in which he is not enrolled was overbroad.  We agree and will remand with instructions to determine whether that condition is still in effect, and, if so, whether any intervening circumstances currently justify that condition.

FACTS

The trial consisted of one witness, the arresting officer, John Charles Gorton.  Gorton is an officer with the City of Orange Police Department.  On May 31, 2014, Gorton responded to a radio dispatch call of an alleged theft of muffins from a grocery store located on Chapman Avenue, near the intersection with Tustin Street. Gorton was informed the perpetrator was about 12 years old, Hispanic, wearing a black

2

backpack, and last seen heading westbound on Chapman Avenue. Gorton was also informed the Hispanic juvenile was with a black juvenile male on a bicycle wearing a blue polo shirt and dark jeans. Gorton initially testified the radio dispatch call included information that the Hispanic juvenile was male and wearing dark clothing, but after reviewing his notes, acknowledged that he was not provided the gender or clothing of the Hispanic juvenile.

Gorton arrived at the scene approximately 15 minutes after receiving the radio dispatch call. He continued driving in his marked police vehicle past the store, westbound on Chapman Avenue. Approximately half of a mile past the store, he noticed a group of young people walking westbound on the north side of the street (the same side of the street as the grocery store). Gorton estimated this was about a five to 10 minute walk from the grocery store. The group of juveniles included a black male, two female Hispanics, and a male Hispanic who was riding a bike, wearing a black backpack, and who appeared to be approximately 12 years old.

Gorton pulled his vehicle within 10 feet of the juveniles to get a better view. Minor was the Hispanic male riding the bicycle, who Gorton recognized from prior contacts. Gorton knew Minor to be 15 years old but testified that he looked younger than his age. Just two weeks earlier, Gorton had been in contact with Minor in connection with a theft investigation.

Gorton called Minor's name and instructed him to stop. Minor looked right at Gorton, made eye contact, and fled on his bicycle. Gorton pursued Minor on Chapman Avenue, onto Montgomery Street, and ultimately into a private driveway behind a closed business, all the while yelling at Minor to stop. At that point the chain came off of the bicycle causing Minor to fall to the ground. Gorton got out of his car and pursued Minor, who was now running away. Gorton caught up, grabbed Minor by his shirt, and dragged him back to the police car and arrested him. When Gorton asked Minor why he ran,

3

Minor said he was tired of being harassed by police. And while not necessarily relevant to this appeal, Gorton did not find any muffins in Minor's black backpack.

At the close of evidence the defense made a motion to suppress all evidence of minor's resisting, delaying, or obstructing Gorton pursuant to Welfare & Institutions Code section 700.1. Defense counsel summed up the motion as follows: "I don't believe that the People have proven that he was acting in the lawful performance of his duties. This was an illegal detention, is what it comes down to." The court denied the motion and found the allegations in the petition to be true.

## DISCUSSION

Minor first contends that Gorton's detention was without reasonable suspicion, and thus Gorton was not lawfully discharging his duties, an essential element of resisting arrest. We disagree.

A person who "willfully resists, delays, or obstructs any . . . peace officer . . . in the discharge or attempt to discharge any duty of his or her office or employment" is guilty of misdemeanor resisting arrest. (Pen. Code, § 148, subd. (a)(1).) "However, 'it is no crime in this state to nonviolently resist the unlawful action of police officers.' [Citation.] Thus, '[b]efore a person can be convicted of [a violation of section 148, subdivision (a)] there must be proof beyond a reasonable doubt that the officer was acting lawfully at the time the offense against him was committed.' [Citation.] '"The rule flows from the premise that because an officer has no duty to take illegal action, he or she is not engaged in 'duties' for purposes of an offense defined in such terms, if the officer's conduct is unlawful. . . ."' [Citations.] 'Under California law, an officer is not lawfully performing her duties when she *detains an individual without reasonable suspicion* or arrests an individual without probable cause.'" (*Garcia v. Superior Court*

4

(2009) 177 Cal.App.4th 803, 818-819.)  There is no dispute in this case that when Gorton called Minor's name and instructed him to stop, a detention occurred.

"[T]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." (*United States v. Sokolow* (1989) 490 U.S. 1, 7.)  "The guiding principle in determining the propriety of an investigatory detention is 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.'" (*People v. Wells* (2006) 38 Cal.4th 1078, 1083.)  "[T]o be reasonable, the officer's suspicion must be supported by some specific, articulable facts that are 'reasonably "consistent with criminal activity."'" [Citation.]  The officer's subjective suspicion must be objectively reasonable, and 'an investigative stop or detention predicated on mere curiosity, rumor, or hunch is unlawful, even though the officer may be acting in complete good faith." (*Ibid*.)  "In making our determination, we examine 'the totality of the circumstances' in each case.'" (*Ibid*.)  The question boils down to whether the circumstances "warranted further investigation." (*Sokolow*, at p. 10.)

And they did.  Minor matched the perpetrator described in the radio dispatch call in the following respects:  (1) apparent age, (2) wearing a black backpack, (3) ethnicity, (4) traveling with a black juvenile, (5) the two of them had a bike,[1] and (6) direction of travel.  Further, Minor (7) was in the vicinity of the crime (8) shortly after the crime occurred.  Further, once Gorton recognized Minor, (9) he knew Minor as someone who had potentially been involved with past theft offenses.  At minimum, these circumstances warranted a brief detention to investigate whether Minor was involved in the crime.

---

[1]    Granted, the radio dispatch call described the black juvenile as riding the bike, but it is reasonable to presume the minors could be taking turns on the bike.

In contending otherwise, Minor argues these facts are "vague, fragmentary, and extremely general" (e.g. there was no information about Minor's gender or clothing), and also that they did not precisely match the information from the radio dispatch call (e.g. Minor was riding the bike instead of the black male, there were two female Hispanics with the males, the officer was not sure if the black male was wearing a blue polo as indicated in the radio dispatch call). To be sure, the facts Gorton was aware of are a long way from proving Minor committed the theft. But that is not the standard for assessing reasonable suspicion. "The possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct. Indeed, the principal function of his investigation is to resolve that very ambiguity and establish whether the activity is in fact legal or illegal — to 'enable the police to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges.'" (*In re Tony C.* (1978) 21 Cal.3d 888, 894 (*Tony C.*).) At the outset of an investigation, the known facts often will be vague, fragmentary, and general, but when those facts objectively suggest a reasonable possibility that the person detained was involved in a crime, they are sufficient to justify the detention for purposes of further investigation. That was the case here.

In contending otherwise, Minor relies on *Tony C., supra*, 21 Cal.3d 888, which we find distinguishable. There, an officer saw two black youths walking down the street during the noon hour of a weekday. (*Id.* at p. 896.) The officer made a u-turn and drove back to where he saw the youths, only this time he saw only one of the black youths standing on the corner. (*Ibid.*) The officer made another u-turn, drove past the youths again, and this time saw them both. (*Ibid.*) The officer pulled over and detained the youths. (*Ibid.*) The articulable facts the officer gave were that it was during school hours and the youths should have been in school, and the day before there had been burglaries in the area perpetrated by three black males (of an unspecified age) and when

6

he was unable to see the second youth on one of his passes, he thought possibly the youth on the corner was acting as a lookout.  (*Id.* at pp. 896-898.)

The court held this did not amount to reasonable suspicion.  The fact that the youths were not in school was of no consequences because during the noon hour there are ample reasons for youths to be out of school, not the least of which is to get lunch.  (*Tony C., supra,* 21 Cal.3d at p. 897.)  With regard to the burglary, "A day-old burglary report does not transform a residential neighborhood into a no man's land in which any passerby is fair game for a roving police interrogation . . . ."  (*Ibid.*)  With regard to the youths' race, the court rejected that basis as sufficient in itself, stating that if a person could be detained simply on the basis of his or her race, "Such wholesale intrusion into the privacy of a significant portion of our citizenry would be both socially intolerable and constitutionally impermissible."  (*Id.* at p. 898.)

Here, Gordon proceeded on considerably more specific information, including Minor's age, ethnicity, that he was wearing a black backpack, he was with a black companion, they had a single bicycle between them, he was heading the same direction as the perpetrator, and he was in the vicinity of the crime shortly after the crime occurred.  Accordingly, we affirm the court's order denying the motion to suppress evidence of minor's obstruction of a police officer and finding that the allegations of the petition were true.

Minor's second contention is that one of the probation conditions was unreasonable; in particular:  "Minor not to be on any school campus where not enrolled without permission of the school administration."  Minor's counsel objected to the condition, stating, "often times a school is where on afternoons, evenings, weekends, that's where there's basketball courts, that's where there's other activities where he might be meeting with a friend.  Is it a necessity?  No.  But I don't see a relation between this charge, which was on the street not even near a school, and saying that he needs to stay off the school grounds."  The court overruled the objection, stating, "I'm troubled by the

7

fact that there may be some drug use and sometimes minors run into other minors around schools and they are getting access to drugs." On appeal, Minor challenges this condition to the extent it prohibits visiting other campuses *after* school hours.

In formulating probation conditions, "[t]he court may impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." (Welf. & Inst. Code, § 730, subd. (b).) "The juvenile court has wide discretion to select appropriate conditions . . . . [Citations.] In distinguishing between the permissible exercise of discretion in probationary sentencing by the juvenile court and that allowed in 'adult' court, [the California Supreme Court has] advised that, '[a]lthough the goal of both types of probation is the rehabilitation of the offender, "[j]uvenile probation is not, as with an adult, an act of leniency in lieu of statutory punishment. . . ." [¶] In light of this difference, a condition of probation that would be unconstitutional or otherwise improper for an adult probationer may be permissible for a minor under the supervision of the juvenile court. . . .'" (*In re Sheena K.* (2007) 40 Cal.4th 875, 889.) "While broader than that of an adult criminal court, the juvenile court's discretion in formulating probation conditions is not unlimited. [Citation.] Despite the differences between the two types of probation, it is consistently held that juvenile probation conditions must be judged by the same three-part standard applied to adult probation conditions under [*People v. Lent* (1975) 15 Cal.3d 481]." (*In re D.G.* (2010) 187 Cal.App.4th 47, 52.) In particular, *Lent* provides, "A condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . ." (*People v. Lent, supra*, 15 Cal.3d at p. 486.)

We conclude the probation condition at issue fails the *Lent* test. The crime at issue had nothing to do with being on school campuses, nor is being on a school

8

campus after school criminal conduct. Where the People make their stand is on the third factor.

First, the People argue that Minor's history of drug use justifies the condition, and this was the trial court's position as well. The probation report states that Minor admitted to regular marijuana usage. However, nothing in the probation report suggests any connection between Minor's drug use and being present on school campuses after school hours. True, Minor *could* use drugs on a school campus, but he could also do so in a back alley, a park, or any number of public places. The mere theoretical possibility that one can use drugs somewhere is not a sufficient nexus to future criminality to warrant a probation condition.

Second, the People contend Minor has a history of criminal trespass onto a school campus. The record, however, does not support that claim. The probation report includes information from an interview with Minor's mother. Mother was listing physical injuries Minor had sustained in the past, and mentioned "he broke an ankle in February 2014 after jumping a school fence to play handball." We have no other information about the incident. For all we know, Minor could have been taking a shortcut into an otherwise open campus, or even had permission by the school administration to play in a handball league. It is pure speculation to assume this amounted to criminal trespass.

Finally, the People contend Minor's history of misbehavior in the school where he was enrolled justifies the condition. The probation report states Minor is enrolled at a continuation school, after voluntarily leaving Orange High for "credit recovery." Minor acknowledged a history of first period truancies and failing grades at conventional school. Minor acknowledged "suspensions for possession of marijuana, fighting, leaving class without permission and disrespecting teachers. Probation records indicate he was also suspended for possessing a toy gun and for rummaging through a teacher's purse and taking her calculator." All of these misbehaviors, however, occurred

9

at the school where he was enrolled, during school hours. There is nothing to suggest he will likely commit crimes on other campuses after school hours.

One oddity of this appeal is that Minor's probation was for six months starting in October 2014, terminating in April 2015. The reply brief in this case was filed in May 2015 with no mention of whether the probation condition is still in effect. Accordingly, we will remand with the instructions set forth in the disposition below.

DISPOSITION

The matter is remanded with the following instructions: If Minor is still subject to the probation condition prohibiting visitation of school campuses without the administration's permission, the court must reconsider Minor's probation condition in light of this opinion. If there are no new circumstances warranting the condition, the court is directed to strike the condition. If new circumstances do exist, the court is directed to exercise its discretion to determine whether such circumstances warrant the condition. In all other respects, the judgment is affirmed.

IKOLA, J.

WE CONCUR:

RYLAARSDAM, ACTING P. J.

MOORE, J.

10