Filed 5/16/23 Morrissette v. Superior Court CA5
Opinion on transfer from Supreme Court.
See concurring & dissenting opinion.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MATTHEW MORRISSETTE, | F084131 |
| Petitioner, | |
| v. | (Super. Ct. No. BF174718A) |
| THE SUPERIOR COURT OF KERN COUNTY, | |
| Respondent; | **OPINION** |
| THE PEOPLE, | |
| Real Party in Interest. | |

-ooOoo-

ORIGINAL PROCEEDINGS; application for writ of mandate or prohibition. Chad A. Louie, Judge.

The Law Office of A. Roxane Bukowski and A. Roxane Bukowski for Petitioner.

No appearance for Respondent.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen, Christopher J. Rench and Darren K. Indermill, Deputy Attorneys General, for Real Party in Interest.

-ooOoo-

SEE CONCURRING AND DISSENTING OPINION

**INTRODUCTION**

Petitioner Matthew Morrisette sought an alternative writ of mandate/prohibition after the superior court denied his Penal Code section 995 motion to set aside an information that charged him, in part, with the substantive gang offense (§ 186.22, subd. (a)), gang-related enhancements (§ 186.22, subd. (b)(1)), and a gang special-circumstance allegation (§ 190.2, subd. (a)(22)). (Undesignated statutory references are to the Penal Code.) In the motion, Morrisette argued the gang-related allegations should be dismissed in light of the changes effectuated by Assembly Bill No. 333 (2021–2022 Reg. Sess.) (Assembly Bill 333), which became effective on January 1, 2022. He asserted the gang offense, enhancements, and special circumstance allegation were proven at the preliminary hearing under the former law, but the evidence presented at the preliminary hearing was insufficient under the new definitions of "pattern of criminal gang activity" and "criminal street gang" to support them. The court denied the section 995 motion and, initially, we denied the petition from the court's order. Morrissette then petitioned for review in the California Supreme Court and the matter was transferred back to us.

In its transfer order, the California Supreme Court directed us to vacate our order denying mandate and to issue an order directing the respondent superior court to show cause why the relief sought in the petition should not be granted. Accordingly, our court issued an order to show cause and the real party in interest (the People) filed a response conceding Assembly Bill 333 should apply retroactively to the gang enhancements and substantive charge alleged in this case. They argued the matter should be remanded and further preliminary hearing proceedings should be held on the substantive gang offense and gang-related enhancements, but the gang special circumstance should remain unaffected because any changes thereto would be an unconstitutional amendment to Proposition 21. In his reply, Morrissette contends Assembly Bill 333 requires us to dismiss the gang enhancements, substantive gang charge, and gang special circumstance. However, he asserts the People may refile the information below.

2.

We agree with the parties that Assembly Bill 333 applies retroactively to the preliminary hearing proceedings. On the contested issues, we reject the People's contention Assembly Bill 333 does not apply to the gang special circumstance and Morrissette's contention outright dismissal of the gang-related charges is required. For the reasons we set forth in this opinion, we will issue a writ of mandate directing the respondent court to (1) vacate the holding order as to the gang charge in count 7, the gang enhancements attached to counts 1, 2, 3, and 6, and the gang special-circumstance allegation, and (2) grant the People's request to reopen the preliminary hearing proceedings to present evidence on the gang-related elements added by Assembly Bill 333.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 4, 2018, a felony complaint was filed against Morrissette and he was subsequently arrested. A preliminary hearing on multiple charges alleged against Morrissette and his codefendants—Anthony Bonczek, Arthur Hernandez, and Seth Don Marin—was held over the course of two days, on June 9–10, 2021. At the hearing, the prosecution presented 47 exhibits and seven witnesses.

### *Preliminary Hearing Evidence*

Nichalous Evans was one of the deputies who responded to an apartment complex in a community in Kern County at approximately 5:30 p.m. on December 12, 2017. Evans found an unresponsive Black male in his late teens, later identified as Kawanza Hilt, lying on the ground with multiple gunshot wounds. There was a lot of blood and Hilt was "in some major distress." According to Deputy Evans, Hilt "was about to die."

Sergeant Aaron Warmerdam initially responded to the apartment complex and then he followed the blood trail "over a fence into the neighboring mobile home park." The blood trail ended in the center of a roadway in the mobilehome park. Warmerdam located a spent green shotgun shell casing and several 6.35 millimeter shell casings head stamped GFL.

Senior Deputy Sheriff Darin Grantham investigated the shooting and spoke to A.G. who called 911 and reported there was a shooting outside of her residence in the trailer park. Grantham directed surveillance from that area of the trailer park be seized and A.G. confirmed the surveillance footage accurately depicted the area outside her residence. The prosecution introduced the surveillance footage. In discussing the footage, Grantham confirmed two people can be seen getting out of the passenger side of a vehicle. He testified a green bandana was found on the scene that appeared to have been dropped by one of the passengers. Grantham testified four distinct gunshots, meaning the muzzle flash from a gun, can be seen in the video.

Detective William Malloy also reviewed the surveillance footage and found a car, an Audi, that appeared to match the "suspect vehicle." Sergeant Sean Mountjoy located the Audi approximately a mile away from the crime scene. He went to the residence where the car was located and encountered defendant Arthur Hernandez. He searched Hernandez's residence and found a bill statement from Audi Financial in Hernandez's bedroom. He also located two Los Angeles Dodgers baseball hats, some cell phones, and a green bandana on a table. There was a painting on the wall of an ocean wave that had "Surs up 818" written on it. Sergeant Mountjoy testified Hernandez had a tattoo of two praying hands holding a semiautomatic firearm—there was a Warner Brothers symbol on one hand and in script writing it says "Family Over Everything."

Deputy Sanya Maokosy was involved in the search of the black Audi. He found "an Uncle Mike's handgun holster" in a door compartment. He testified he has seen graffiti of the letters DYP "several times," "at least two times" in the small Kern County community. He had also seen graffiti with the word "Psyclones," and testified the color green is associated with that group.

Sergeant Mountjoy testified to text messages found on the phone discovered in Hernandez's residence. One text message from a contact listed as "Badass" said "Y-o-o-o" and included a still picture taken from a surveillance video of the homicide. Sergeant

4.

Mountjoy testified defendant Bonczek was referred to as "Badass." Another contact listed as "Lils" sent a video of the homicide from a different camera angle and a voice can be heard saying, "'You can't get no license plates or nothing, that's good.'" The day after the homicide, Hernandez received a text message from defendant Bonczek that said, "'Keep an eye out fool, stay safe.'" Bonczek also sent a picture of his new face tattoo depicting "DYPX3" above his eye.

Sergeant Mountjoy interviewed defendant Bonczek after Hilt's homicide. Bonczek admitted being present for the homicide and identified the other people in the car with him. Bonczek reported Arthur Hernandez was driving, Matthew Morrisette was in the front passenger seat, Seth Marin was in the backseat behind the driver and Bonczek was in the backseat behind the front passenger seat. Bonczek explained "they had all been hanging out, drinking at the trailer park, they all got into the car and began driving around looking for a rival gang." They pulled up next to Hilt with their windows down. Morrisette "challenged" Hilt and "asked him if he banged, as in gangbanged." Hilt replied "something something Crip." Morrissette told Hilt "it was his hood" and "Hilt disrespected Morrisette by walking away." Morrisette then stepped out of the vehicle with the shotgun and shot at Hilt. Marin also opened the door, leaned out, and shot towards Hilt using a .25-caliber semiautomatic pistol (equivalent to 6.35 mm.). With regard to how many shots he fired, Marin told Bonczek he "emptied a magazine" and he was sure he hit Hilt. According to Mountjoy, "[t]he only projectiles found inside Mr. Hilt were from double-aught buck[shot] from a shotgun." In a letter addressed to Hilt's mother, Bonczek apologized for what had happened. Bonczek told Mountjoy he got out of the car when the shooting started, explaining, "when your partner jumps you are supposed to jump too." Bonczek told Sergeant Mountjoy he got a tattoo above his left eye the night of the homicide; Morrisette tattooed it on him.

Sergeant Mountjoy testified he was familiar with the initials "DYP" from numerous contacts and talks with members of DYP, several investigations, arrests, and

prior cases. He explained DYP stands for Deadly Young Psyclones and members associate with the color green and display loyalty to the color blue. Members of DYP associate with the Southern Hispanic gang and identify as "Southsiders." Mountjoy explained, the subset for the DYP clique in Rosamond is referred to as "the Wild Bunch" and they use the Warner Brothers symbol. Mountjoy explained he knew of 30 to 40 members of DYP.

Bonczek told Mountjoy about his involvement with DYP; "[e]ssentially, he was the number one for a clique that he had started in Covina called Tiny Mob," meaning he was the "shot caller." Bonczek reported "Morrisette was a member of DYP." Sergeant Mountjoy identified Morrisette in various pictures and videos. He explained Morrisette has a tattoo on his head that says Psyclones and a DYP tattoo. Mountjoy believed Morrisette was affiliated with the Wild Bunch based on Morrisette's self-admissions to Mountjoy on numerous occasions. Additionally, Morrisette's "tattoos show[ed] his allegiance to the Wild Bunch and DYP as a whole." Bonczek also stated Marin was a member of DYP. Bonczek told Mountjoy that Hernandez was "from the hood, meaning DYP, as an active member of DYP."

Deputy Jeffrey Fisher testified as a gang expert. He explained he studied the Deadly Young Psyclones criminal street gang by reviewing several cases and information provided to him through search warrants, text messages, and Facebook accounts. He confirmed the defendants made hand signs consistent with DYP in the videos presented. He also confirmed Morrisette has a DYP tattoo over his right eye. He opined Morrissette is an active member of the DYP Southern Hispanic criminal street gang based on his actions during the homicide as displayed on the surveillance video, his tattoos, and his use of hand signs. Fisher discussed Morrissette's tattoo of a cupcake with a bullet hole through it, explaining it is a form of disrespect to a rival gang referred to as "cupcakes." He also considered a tattoo over the entirety of Morrisette's back that says "Wild Bunch," a "Warner Brothers" tattoo on Morrissette's right hand, Bonczek's statements, and

6.

Morrissette's actions in the surveillance footage from the homicide in which "it appeared that he was the first one to make contact with the victim and first one to exit out of the vehicle and fire." Fisher explained he recalled there was some disrespect in the interaction with Hilt and "[d]isrespect is viewed with swift punishment or retaliation." "If one rival gang let's another disrespect them and it goes undealt with, it lowers their status in that environment…. It shows weakness."

Fisher also testified items found in Hernandez's room, including a legal pad with DYPX3 written in it and hats with the letter "D" on them were consistent with membership in the DYP criminal street gang. He opined Hernandez was an active member of DYP at the time of the homicide. He also opined Bonczek was an active member of the DYP Southern Hispanic criminal street gang at the time of the homicide based on his actions during the homicide as displayed on the surveillance video, his tattoos, and use of hand signs. He opined Marin was also an active member of DYP Fisher testified the presence of a green bandana at the scene of the homicide suggests that DYP was involved. He stated the primary activities of DYP include unlawful possession of firearms, vandalism, narcotics sales, robberies, illegal weapon sales, and assaults.

After being posed with a hypothetical situation mirroring the facts of the case, Mountjoy testified he believed the crime was done for the benefit of, at the direction of, and in association with DYP. He explained, the shooting was "simply for the benefit of the gang and to maintain their notoriety, because if they are challenged or disrespected in such a way they have to respond accordingly. And they … responded by shooting the subject." Fisher explained, after the perceived disrespect, the gang is required to act "[t]o not show weakness that transfers from that instant out that they will not tolerate to be disrespected in their territory or their hood." He testified the green bandana that was left along with the green shotgun shell represent "the color green that is displayed by DYP."

Fisher opined the shooting was committed in association with DYP based, in part, on the fact more than one member was involved. "We had four DYP gang members in

the car who challenged somebody in the neighborhood which is technically their claimed hood. And when that person disrespected their hood, specifically [the person in the front seat], that's when they exited the car and shot him."

He also opined the shooting was done at the direction of DYP. He believed the first person to exit the vehicle with the shotgun was directing the shooting, noting once the passenger got out, two other people followed suit, and the driver waited, showing his participation by not leaving at that point.

Fisher also testified regarding two predicate offenses. The first was a July 21, 2017, case against Adrian Aristigi in which he pleaded no contest to first degree burglary (§ 460, subd. (a)) and admitted a gang enhancement (§ 186.22, subd. (b)(1)) that referred to the Deadly Young Psyclones as the criminal street gang. The complaint and certified docket related to the offense were introduced. Mountjoy opined Adrian Aristigi was a member of DYP based upon prior investigations, personal conversations with him, and prior convictions. The second predicate offense was a 2011[1] case involving Eurie Brim and Scott King in which Brim was convicted of assault with a firearm (§ 245, subd. (a)(2)) and second degree robbery (§ 212.5, subd. (c)), and the jury found true various enhancements, including gang enhancements (§ 186.22, subd. (b)(1)) as to each charge. Mountjoy opined, based on prior investigations, search warrants of his residence, and prior convictions, Eurie Brim was an active member of the Deadly Young Psyclones between 2011 and 2013, when he became a dropout.

After the conclusion of evidence, the court found "the evidence is sufficient to meet that low burden of proof as to both the charged offense as well as the enhancements, including the elements of a pattern of criminal gang activity." Accordingly, the court found probable cause to believe Morrisette and his codefendants had committed the offenses and enhancements charged and held them to answer to those charges.

---

[1]The charging document and testimony erroneously state the robbery occurred in 2001, however, the parties do not appear to dispute it occurred in 2011 as evidenced by the docket sheet.

*Charges and Information*

Morrisette and his codefendants were charged by information on June 18, 2021, with the first degree murder of Hilt (§ 187, subd. (a); count 1). As to Morrisette, it was alleged the murder was intentional and committed while he was an active participant in a criminal street gang and it was carried out to further the activities of the gang within the meaning of section 190.2, subdivision (a)(22); he was a principal in the offense and a principal intentionally and personally discharged and used a firearm that proximately caused great bodily injury or death to a person other than an accomplice within the meaning of section 12022.53, subdivisions (d) and (e)(2); the murder was committed by one of the means described in section 189; and the offense was committed for the benefit of, at the direction of, or in association with the Deadly Young Psyclones with the specific intent to promote, further or assist in criminal conduct by gang members (§ 186.22, subd. (b)). Morrisette and his codefendants were also charged with assault with a firearm on Hilt (§ 245, subd. (a)(2); count 2) with a gang enhancement (§ 186.22, subd. (b)) and assault with a semiautomatic firearm (§ 245, subd. (b); count 3) with a gang enhancement (§ 186.22, subd. (b)). As to Morrisette, it was alleged he personally used a firearm (§ 12022.5, subd. (a)) and he personally inflicted great bodily injury on Hilt (§ 12022.7) during the commission of count 2. Morrisette was charged in count 6 with unlawful possession of a firearm in violation of section 29800, subdivision (a)(1), with a gang enhancement (§ 186.22, subd. (b)).[2] And all the defendants were charged with active gang participation in count 7 (§ 186.22, subd. (a)) and, as to Morrisette, it was alleged he personally used a firearm (§ 12022.5, subd. (a)) and he personally inflicted great bodily injury on Hilt (§ 12022.7) during the commission of count 7. The information also included prior conviction allegations as to Morrisette.

---

[2]Hernandez was charged in count 4 with willfully, knowingly, and unlawfully permitting another person to discharge a firearm from the vehicle he owned or drove in violation of section 26100, subdivision (b) with related enhancements, and Marin was charged in count 5 with willfully, unlawfully, and maliciously discharging a firearm from a motor vehicle at Hilt in violation of section 26100, subdivision (c).

### *Section 995 Motions to Dismiss*

In March 2022, Morrisette filed a section 995 motion to dismiss the substantive gang charge (count 7), the gang enhancements, and the gang special circumstance under Assembly Bill 333. Morrisette argued the 2011 predicate offense did not fall within the time frame for the predicate offenses established by Assembly Bill 333, and the 2017 predicate offense "involves only one alleged gang member, and therefore cannot establish a 'pattern of criminal gang activity' as required by the new legislation." He also argued there was no evidence as to how either of the predicate offenses benefitted the gang and no evidence, other than reputation, was presented to prove the current offense benefitted the gang. He also asserted the prosecution failed to establish DYP is an ongoing, organized association whose members engage in, or have engaged in, a pattern of criminal gang activity. And he argued there was no evidence the predicate offenses presented constituted collective criminal activity.

The People opposed the motion, arguing Assembly Bill 333 did not apply retroactively to the preliminary hearing. They also argued the evidence presented at the preliminary hearing showed the current offense involved the targeting of a perceived gang rival and/or retaliation and it was committed in association with DYP. They further contended there was sufficient evidence of DYP's organization. Finally, they asserted they should be permitted to reopen the preliminary hearing proceedings and introduce additional evidence related to the predicate offenses pursuant to section 995a, subdivision (b).

At the hearing on the motion, the prosecutor argued that retroactivity "goes back to the trial because that's going to be the ultimate decider of the facts. It doesn't go all the way back to the preliminary hearing, and it doesn't go all the way back to the filing or else we can have a 995 on any of those cases or even a demur[rer]." He argued it "would take an enormous amount of judicial resources" if Assembly Bill 333 was retroactive to the preliminary hearing such that it required it to be reopened.

Morrissette's counsel argued "the defendants were held to answer on predicates and evidence that was presented by the prosecution at the preliminary hearing, which is no longer valid law." She argued "the gang enhancements should be dismissed because they want to comport with the law as it now currently stands."

The court denied the motions to set aside the information. It explained:

"There are Appellate Court decisions that deal with a situation where a defendant is convicted at trial, but pending final judgment, the law changes. And what the Court of Appeal has said is they allow the People to go back and reopen the case and try those charges based on the new law, the changes in the new law. The defendant under that circumstance would be in the exact same posture as the defendants are in this case. Meaning, they're pending trial on—on charges or enhancements where the law has changed. Although I do recognize that the defendants in this case compared to the defendants in the other case where they went through trial, and then the Court of Appeal sent it back because the law had changed pending final judgment. They got to the same place in a different way, but nevertheless they are in the same place. Given that there is that legal authority, I'm going to be denying the 995 and the case will proceed to trial. The People are obligated to provide discovery. [Prosecutor], as you know under the Penal Code Section there is a certain timeline where you need to provide that discovery, and the People will have to prove beyond a reasonable doubt all the charges and allegations per the new law."

## DISCUSSION

Morrisette filed a petition for writ of mandamus or prohibition seeking review of the court's order denying his section 995 motion to dismiss the gang-related charge, enhancements, and special circumstance allegation. We now remand for further proceedings.

## I. Assembly Bill 333 Applies Retroactively to the Preliminary Hearing Proceedings

Initially, the parties agree, as do we, that Assembly Bill 333's changes to section 186.22 should apply retroactively to the evidence presented at the preliminary hearing. In addition to the briefing submitted by the parties, the Kern County District Attorney's Office previously filed an application for permission to file an amicus curiae brief in this case. In our original order denying the writ of mandate or prohibition, which has now

11.

been vacated, we denied the application for permission to file an amicus curiae brief. For purposes of clarity, we reiterate the order denying the application for permission to file an amicus curiae brief.

### A. Applicable Law

#### 1. *Assembly Bill 333*

After the preliminary hearing when Morrisette was held to answer on the charges, including the gang-related allegations, the Legislature enacted Assembly Bill 333, the STEP Forward Act of 2021, which, in part, amends section 186.22 to impose new substantive and procedural requirements for gang allegations. The legislation went into effect on January 1, 2022.

Assembly Bill 333 amended the definition of a "'criminal street gang,'" requiring proof that the gang is an ongoing, *organized* association or group of three or more persons, whose members *collectively* engage in, or have engaged in, a pattern of criminal activity (§ 186.22, subd. (f)). The law also created a stricter requirement for proof of "'a pattern of criminal gang activity,'" which is necessary to prove that the group with which the defendant is associated is indeed a criminal street gang. (See § 186.22, subds. (e)–(f).) Previously, the prosecution needed to prove only that those associated with the gang had committed at least two offenses from a list of predicate crimes on separate occasions within three years of one another. (See § 186.22, former subd. (e).) Under the newly amended law, the offense with which the defendant is currently charged cannot be used as one of the two predicate offenses. (§ 186.22, subd. (e)(2).) In addition, the last of the predicate offenses must have "occurred within three years of the prior offense and within three years of the date the current offense is alleged to have been committed." (§ 186.22, subd. (e)(1).) The predicate offenses must have been committed "on separate occasions or by two or more members," and must have been for the "common[] benefit[] [of] a criminal street gang," and the common benefit of the offenses must be "more than reputational." (*Ibid.*) Assembly Bill 333 also narrowed the list of offenses that may be

used to establish a pattern of criminal gang activity (compare § 186.22, former subd. (e)(1)–(33) with § 186.22, current subd. (e)(1)(A)–(Z)). Additionally, it now defines "to benefit, promote, further, or assist" throughout section 186.22 to mean "to provide a common benefit to members of a gang where the common benefit is more than reputational." (*Id.*, subd. (g).) The legislation notes examples of a common benefit that are more than reputational "may include, but are not limited to, financial gain or motivation, retaliation, targeting a perceived or actual gang rival, or intimidation or silencing of a potential current or previous witness or informant." (*Ibid.*)

### 2. *Retroactivity*

Section 3, which instructs that no part of the Penal Code applies retroactively, unless expressly so declared, has been interpreted to mean that new criminal laws do not govern prosecutions initiated before the law went into effect. (See *People v. Padilla* (2022) 13 Cal.5th 152, 160; *In re Estrada* (1965) 63 Cal.2d 740, 746–748 (*Estrada*).) However, the California Supreme Court has recognized an exception to this rule for new laws that mitigate punishment. (*Padilla*, *supra*, at p. 160; *Estrada*, *supra*, at p. 745.) The *Estrada* court held that such laws are presumed to apply to cases charged before the law's enactment but that are not yet final. (*Estrada*, at p. 745; see *Padilla*, at p. 160.) Absent evidence to the contrary, we presume that when the Legislature "'amends a statute so as to lessen the punishment,' it 'must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply.' [Citation.] Because the Legislature has 'determined that its former penalty was too severe,' the only reason to apply that penalty in pending cases would be 'a desire for vengeance,' a motivation we decline to attribute to our lawmakers." (*Padilla*, at p. 160.)

In that regard, in *People v. Tran* (2022) 13 Cal.5th 1169, the California Supreme Court held Assembly Bill 333's amendments to section 186.22 altering the requirements necessary to prove the substantive gang offense and gang enhancements operate

retroactively under the rule of *Estrada*. (*Tran*, at p. 1206.) The *Tran* court explained "*Estrada* 'stand[s] for the proposition that (i) in the absence of a contrary indication of legislative intent, (ii) legislation that ameliorates punishment (iii) applies to all cases that are not yet final as of the legislation's effective date.' [Citation.] *Estrada* applies to statutory amendments 'which redefine, to the benefit of defendants, conduct subject to criminal sanctions.' [Citation.] Here, 'Assembly Bill 333 essentially adds new elements to the substantive offense and enhancements in section 186.22—for example, by requiring proof that gang members "collectively engage" in a pattern of criminal gang activity, that the predicate offenses were committed by gang members, that the predicate offenses benefitted the gang, and that the predicate and underlying offenses provided more than a reputational benefit to the gang.…' [Citations.] These changes have the effect of 'increas[ing] the threshold for conviction of the section 186.22 offense and the imposition of the enhancement,' with obvious benefit to defendants like Tran. [Citation.]" (*People v. Tran*, *supra*, at pp. 1206–1207.)

### B. Analysis

In our recent opinion, *Mendoza v. Superior Court* (May 3, 2023, F084354) __ Cal.App.5th __ [2023 Cal.App. LEXIS 340], we addressed many of the issues raised in this appeal and held new laws, such as Assembly Bill 333, that change the elements of an offense or enhancement to a defendant's benefit apply retroactively to the showing necessary to hold a defendant to answer to the related charge or enhancement. Put differently, we held the evidence presented at a preliminary hearing that was sufficient to hold a defendant to answer under the old law is not necessarily sufficient to hold a defendant to answer despite the change in the law. The parties agree with our conclusion the *Estrada* presumption should apply such that Assembly Bill 333's amendments to section 186.22 would apply retroactively to the showing required at the preliminary hearing.

14.

As discussed, absent evidence to the contrary, we presume that when the Legislature "'amends a statute so as to lessen the punishment,' it 'must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply.'" (*People v. Padilla*, *supra*, 13 Cal.5th at p. 160; accord, *Estrada*, *supra*, 63 Cal.2d at p. 745).  And there is no basis upon which to conclude Assembly Bill 333's changes to the elements of the gang-related offenses should not apply to the showing required at the preliminary hearing.  Rather, Morrissette's case is not final and Assembly Bill 333's amendments are retroactive under *Estrada*.  (See *People v. Tran*, *supra*, 13 Cal.5th at pp. 1206–1207.)  Accordingly, its changes to the elements of the gang-related charges should be retroactive to the showing necessary to sustain the gang-related charges at the preliminary hearing.  Indeed, as provided in section 872, subdivision (a), a defendant shall only be held to answer where "it appears from the preliminary examination that a public offense has been committed, and there is sufficient cause to believe that the defendant is guilty."  In situations such as this, where a change in the law amends the elements of an offense, it follows that a defendant should only be held to answer where it appears from the preliminary examination that a public offense has been committed *under the new law*, inasmuch as conduct under the old law may no longer constitute an offense.  To hold otherwise would obviate the purpose of a preliminary examination and permit a defendant to be held to answer for an offense or enhancement for which the requisite showing has not been made.

Accordingly, we agree with the parties that a defendant may seek the benefit of the change in the law by challenging the evidence presented at the preliminary hearing to hold the defendant to answer based on the change in the law.

## II.     The Holding Order as to the Substantive Gang Charge, Gang Enhancements, and Gang Special Circumstance Must Be Vacated

Here, the parties do not dispute the evidence produced at the preliminary hearing—specifically, the evidence of the predicate offenses—was insufficient to hold

Morrissette to answer to the substantive gang charge (§ 186.22, subd. (a); count 7) and the gang enhancements (§ 186.22, subd. (b)(1)) under the amended law. Again, we agree. However, the parties dispute whether Assembly Bill 333's amendments to section 186.22 apply to the gang special circumstance (§ 190.2, subd. (a)(22)). Morrisette asserts the amendments to section 186.22 apply to the gang special circumstance, which incorporates section 186.22, by reference. The People argue applying Assembly Bill 333's amendment to section 186.22, subdivisions (e) and (f) in this context would result in an unconstitutional amendment to the gang-murder special circumstance created by the voters via Proposition 21. We agree with Morrissette that Assembly Bill 333's amendments apply to the section 190.2, subdivision (a)(22) finding.

Section 190.2, subdivision (a)(22) was enacted as part of Proposition 21, an initiative measure adopted by the electorate in the March 2000 primary election. (*People v. Shabazz* (2006) 38 Cal.4th 55, 65.) Section 190.2, subdivision (a)(22) makes first degree murder a capital crime if "[t]he defendant intentionally killed the victim while the defendant was an active participant in a criminal street gang, *as defined in subdivision (f) of Section 186.22*, and the murder was carried out to further the activities of the criminal street gang." (Italics added.)

There is a split of authority on whether applying the changes effectuated by Assembly Bill 333 to the gang special circumstance amounts to an unconstitutional amendment to Proposition 21. In *People v. Lopez* (2021) 73 Cal.App.5th 327, the Second Appellate District, Division Eight, concluded "Assembly Bill 333's changes to section 186.22 affect not only the gang enhancement allegations under that statute but other statutes that expressly incorporate provisions of section 186.22," including section 190.2, subdivision (a)(22). (*Lopez*, at p. 346.) The *Lopez* court held, because "the definition of a criminal street gang has been narrowed by Assembly Bill 333 and new elements added in order to prove a criminal street gang and a pattern of criminal activity," the

requirements for proving a gang special circumstance under section 190.2, subdivision (a)(22) have likewise changed. (73 Cal.App.5th at p. 347.)

In *People v. Rojas* (2022) 80 Cal.App.5th 542, review granted October 19, 2022, S275835, a divided panel in our district reached the opposite conclusion. (*Id*. at pp. 557–558.) The *Rojas* majority held, "[b]ecause Assembly Bill 333 'takes away' from the scope of conduct that Proposition 21 made punishable under section 190.2" (*id*. at p. 555), "it is unconstitutional to the extent it would amend that initiative" (*id*. at p. 557). The *Rojas* majority relied on the fact California voters restricted the Legislature's ability to amend the provisions of Proposition 21. (*Rojas*, at p. 555.) The majority reasoned: "While the Legislature was free to amend Proposition 21 …, it could only do so with a two-thirds vote in each house. (Voter Information Guide, Primary Elec. (Mar. 7, 2000) text of Prop. 21, … § 39, p. 131.) Assembly Bill 333 did not comply with that requirement and therefore cannot amend Proposition 21." (*Ibid*.) As a result, *Rojas* implies that a special circumstance murder allegation under section 190.2, subdivision (a)(22) may be proven based on a different, less restrictive definition of a "criminal street gang" than is found in the current version of section 186.22. (See *Rojas*, at p. 558 [holding "Assembly Bill 333 does not alter the scope or effect of section 190.2, subdivision (a)(22)"].)

In *People v. Lee* (2022) 81 Cal.App.5th 232, review granted October 19, 2022, S275449, Division Four of the Second Appellate District concluded Assembly Bill 333 does not unconstitutionally amend section 190.2, subdivision (a)(22). (*Lee*, at p. 242.) Focusing on the question of voter intent, the *Lee* court opined there is "nothing to suggest that the electorate intended to impose a time-specific incorporation of the term 'criminal street gang' in the gang-murder special-circumstance statute." (*Lee*, at p. 245.) Accordingly, *Lee* holds "that the term 'criminal street gang' as incorporated in the gang-murder special-circumstance statute was 'intended to conform at all times' and 'remain permanently parallel' to section 186.22." (*Ibid*., quoting *In re Jovan B*. (1993) 6 Cal.4th

17.

801, 816–817 & fn. 10.) The *Lee* court further reasoned, the voters reenacted section 186.22, subdivision (f) without substantive change; so "subdivision (f) of section 186.22 cannot be deemed 'among the initiative's statutory provisions' made immune from legislative amendment by force of article II, section 10 of the state Constitution." (*Lee*, at p. 242.) "In short, the voters left intact the Legislature's power to amend the definition of a criminal street gang in section 186.22, subdivision (f)." (*Ibid*.) And, the *Lee* court concluded, there was no basis to conclude the voters did not intend to permit any future amendment to 186.22, subdivision (f) to be incorporated into the gang-murder special circumstance. (*Lee*, at p. 242.) Rather, "[i]n enacting Proposition 21, the electorate clearly knew how to express the intent to freeze a statutory definition," given the express time-specific incorporations in other sections; but it did not include a time-specific incorporation of section 186.22, subdivision (f) in section 11 of Proposition 21, the provision in Proposition 21 providing for the gang-murder special circumstances. (*Lee*, at pp. 242–243.) Accordingly, "[t]here is simply no basis to believe that the voters understood they were precluding future amendments of subdivision (f) of section 186.22 as referred to in the gang-murder special circumstance, while permitting such future amendments for section 186.22 itself." (*Id*. at p. 243.)

Relatedly, in *People v. Lopez* (2022) 82 Cal.App.5th 1, another panel of our court held Assembly Bill 333 did not unconstitutionally amend the crime of gang conspiracy proscribed by section 182.5 that was enacted as part of Proposition 21.[3] (*People v. Lopez, supra*, at p. 21.) Like *Lee*, the *Lopez* court reasoned, in part, that there was no time-specific provision in Proposition 21 for section 182.5 as there was for other provisions of the criminal law. (*Lopez*, at pp. 23–24.) Accordingly, the *Lopez* court concluded, "[W]e agree with *Lee*'s conclusion that 'the electorate clearly knew how to express the intent to freeze a statutory definition,'" and "[t]he absence of such time-

---

[3] "[C]ertain elements of the gang conspiracy offense proscribed by section 182.5 are defined by incorporation of provisions that *were* amended by Assembly Bill 333, namely, section 186.22, subdivisions (e) and (f)." (*People v. Lopez, supra*, 82 Cal.App.5th at p. 18.)

18.

specific language in section 182.5 leads to our rejection of the People's claim." (*Id.* at pp. 24, 25.)

We agree with and endorse the reasoning of *Lee*. Applying that reasoning here, we conclude the holding order as to the section 190.2, subdivision (a)(22) special circumstance, the gang enhancements, and the substantive gang charge (count 7) must be vacated. We next consider the appropriate remedy.

## III. Reopening of the Preliminary Hearing Proceedings Is Appropriate

The parties dispute the appropriate remedy; Morrisette contends the gang-related charges should be dismissed and the People may refile them, and the People argue they should be entitled to reopen the preliminary hearing to present additional evidence on those charges. As our court concluded in *Mendoza v. Superior Court*, *supra*, __ Cal.App.5th __ [2023 Cal.App. LEXIS 340], and as further explained herein, we conclude the prosecutor should be permitted to reopen the preliminary hearing proceedings to present additional evidence on the amended elements of the gang-related charges.

### A. Applicable Law

#### 1. Sections 995 and 995a

Section 995 provides, in relevant part, upon a defendant's motion, an information shall be set aside where "the defendant had been committed without reasonable or probable cause." (§ 995, subd. (a)(2)(B); see *People v. Henson* (2022) 13 Cal.5th 574, 582.) "'''Reasonable or probable cause' means such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of guilt of the accused. 'Reasonable and probable cause' may exist although there may be some room for doubt.''" (*People v. Mower* (2002) 28 Cal.4th 457, 473; accord, § 872, subd. (a) [defendant shall be held to answer where "it appears from the [preliminary] examination that a public offense has been committed, and there is sufficient cause to believe that the defendant is guilty"].) Accordingly, "section 995

19.

allows a defendant to challenge an information based on the sufficiency of the record made before the magistrate at the preliminary hearing.  [Citation.]  In reviewing the denial of a … section 995 motion to set aside an information, we 'in effect disregard[] the ruling of the superior court and directly review[] the determination of the magistrate holding the defendant to answer.'  [Citations.]"  (*Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1071–1072.)

Assembly Bill No. 2984 added the remand procedure of section 995a, subdivision (b), which is at issue here.  The Assembly Committee on Criminal Justice, the Senate Committee on the Judiciary, as well as the Legislature passed the bill unanimously in 1982.[4]  (*Caple*, *supra*, 195 Cal.App.3d at pp. 600–601.)

Section 995a, subdivision (b)(1) provides that "without setting aside the information" a court may, upon motion of the prosecuting attorney, "order further proceedings to correct errors alleged by the defendant if the court finds that such errors

---

[4]"As introduced, the bill would have added the following new subdivision (b) to section 995:  'Without setting aside the information, the court may, in its discretion, remand the cause to the committing magistrate for further proceedings, or itself sit as a magistrate and conduct further proceedings, which it deems appropriate, if the court finds that the errors alleged by the defendant could be expeditiously cured or corrected by further proceedings.  Any further proceeding held pursuant to this subdivision may include the taking of testimony and shall be deemed to be part of the preliminary examination.'

"As enacted, subdivision (b) of section 995a shows that Assembly Bill No. 2984 had been substantially amended.  The amendments (1) moved the remand provision from section 995 to section 995a; (2) permitted remand only 'upon motion of the prosecuting attorney'; (3) limited the remedy to 'minor errors of omission, ambiguity, or technical defect which can be expeditiously cured or corrected without a rehearing of a substantial portion of the evidence'; (4) permitted the superior court itself to 'sit as a magistrate' for the purpose of the further proceedings only if the parties agree; (5) required that the superior court, upon remanding to the original magistrate, state the perceived 'minor errors' in the remand order; (6) permitted recourse to the correction procedure only once with respect to any information; (7) provided that the correction proceedings shall not be deemed to extend the time within which a defendant must be brought to trial under … section 1382; (8) required that the superior court reserve its final ruling on the motion to set aside the information until the correction proceedings are completed; and (9) anticipated writ review if 'the [superior] court abused its discretion in utilizing the procedure set out in subdivision (b) of section 995a.…'" (*Caple v. Superior Court* (1987) 195 Cal.App.3d 594, 601, fn. 6 (*Caple*).)

are minor errors of omission, ambiguity, or technical defect which can be expeditiously cured or corrected without a rehearing of a substantial portion of the evidence." That is, "[b]efore a trial court may institute further proceedings to correct preliminary hearing errors, section 995a requires it make two separate findings: (1) a minor error of omission, ambiguity or technical defect which, (2) can be expeditiously cured." (*Caple*, *supra*, 195 Cal.App.3d at p. 601; accord, *Garcia v. Superior Court* (2009) 177 Cal.App.4th 803, 814 ["section 995a, subdivision (b)(1) is reasonably understood as giving the court *discretion* to order further proceedings instead of setting aside an information but only if the … statutory prerequisites are met"].) "In cases in which the procedure set out in subdivision (b) of Section 995a is utilized, the court shall reserve a final ruling on the [section 995] motion [to set aside the information] until those procedures have been completed." (§ 995, subd. (b).)

### 2. *Principles Governing Remand Based Upon Change in the Law*

California courts have held, when a conviction is reversed because the evidence is now insufficient to support it based solely upon a change in the law that occurred after the defendant was convicted, retrial of that conviction is permitted and not barred by the double jeopardy clause. (See, e.g., *People v. Sek* (2022) 74 Cal.App.5th 657, 669 [reversing gang enhancements as a result of passage of Assem. Bill 333 and permitting retrial, reasoning "'[b]ecause we do not reverse based on the insufficiency of the evidence required to prove a violation of the statute as it read at the time of trial, the double jeopardy clause of the Constitution will not bar a retrial'"]; accord, *People v. Figueroa* (1993) 20 Cal.App.4th 65, 68, 71–72 [reversing enhancement in light of amendment to statute adding a new element to it, and remanding to give People opportunity to prove up the new element].) Such cases reason, "'""Where, as here, evidence is not introduced at trial because the law at that time would have rendered it irrelevant, the remand to prove that element is proper and the reviewing court does not treat the issue as one of sufficiency of the evidence.""'" (*People v. Sek*, *supra*, at pp.

21.

669–670; accord, *People v. Monk* (2018) 21 Cal.App.5th Supp. 1, 8 [same]; *People v. Ramos* (2016) 244 Cal.App.4th 99, 103 [same]; *People v. Figueroa*, *supra*, at p. 72 [same].)

This conclusion follows from "'a well-established part of our constitutional jurisprudence'"—"'[t]he principle that [the Double Jeopardy Clause] does not preclude the Government's retrying a defendant whose conviction is set aside because of an *error in the proceedings* leading to conviction.'" (*Burks v. United States* (1978) 437 U.S. 1, 14.) This is because "reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, *e.g.*, incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct. When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished." (*Burks*, at p. 15; see *United States v. Tateo* (1964) 377 U.S. 463, 466 ["It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction"].)

Applying the principles articulated in *Burks*, the California Supreme Court in *People v. Shirley* (1982) 31 Cal.3d 18 held it was prejudicial error to admit testimony of a complaining witness who had undergone hypnosis for the purpose of restoring her memory of the events in issue, "but 'reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case.' [Citation.] Rather, the matter is governed by the settled rule that the double jeopardy clause does not prohibit retrial after a reversal premised on error of law. [Citations.]" (*Shirley*, *supra*, at p. 71.) The *Shirley* court explained, the *Burks*

22.

rule "forbids retrial after a reversal ordered because the evidence introduced at trial was insufficient to support the verdict." (*Shirley*, at p. 71.) And, "[t]he rule achieves its aim—i.e., of protecting the defendant against harassment and risks of unnecessary repeated trials on the same charge—by the device of giving the prosecution a powerful incentive to make the best case it can at its first opportunity. (*Burks* [*v. United States*, *supra*, 437 U.S.] at p. 11.) *But the incentive serves no purpose when*, *as here*, *the prosecution did make such a case under the law as it then stood; having done so*, *the prosecution had little or no reason to produce other evidence of guilt*." (*Ibid.*, italics added.)

### B.    Analysis

In his section 999a petition for writ of mandamus, Morrisette asserts the order denying his section 995 motion must be reversed with instructions to the trial court to vacate the gang offense (count 7) and reverse the gang enhancement allegations. He argues the evidence at the preliminary hearing failed to establish the current offense benefitted a criminal street gang (Deadly Young Psyclones) in a manner that was more than reputational. He further contends the evidence failed to establish the predicate offenses occurred within three years of the prior offense and within three years of the current offense (the People presented evidence of 2011 and 2017 offenses) or that they commonly benefitted the gang in a way that was more than reputational as required under the amended law. He also asserts the preliminary hearing failed to establish the Deadly Young Psyclones was an ongoing and "organized" association. Initially, he contended, "[a]fter vacating the offense and reversing the enhancements, [t]his Court should construe a remedy, which likely would entail allowing the [P]eople the opportunity to prove, at a preliminary hearing, the gang offense and enhancements."**5** (Italics omitted.) However,

---

**5**In his "Motion to File a Supplemental Reply," Morrissette also asserted the charges and enhancements should be dismissed and, "[I]f the district attorney wishes to still pursue the dismissed charges, then the district attorney may file a motion for a mini preliminary hearing pursuant to … section 995a, subdivision (b)."

in a supplemental brief and his reply to our order to show cause, he asserts the gang charge, enhancements, and gang murder special circumstance must be dismissed, but the People can refile them and do a new preliminary hearing on those charges. In their response to defendant's petition and to our order to show cause, the People agree the evidence presented at the preliminary hearing did not meet all of the new section 186.22 requirements. Specifically, they agree the evidence was insufficient to establish the predicate offenses occurred within the new requisite time frame and that the predicate offenses commonly benefitted the gang in a way that was more than reputational. They contend the petition should be granted in part and that the matter should be remanded to allow them an opportunity to present evidence on the new statutory requirements.[6] We conclude remand is appropriate for the court to grant the prosecution's request to reopen preliminary hearing proceedings and to present evidence on the new elements of the gang allegations.

First, we conclude the alleged deficiency in the evidence, which is based upon the amended elements of the gang-related offenses, should be considered a "minor omission," such that remand and further preliminary hearing proceedings are permitted pursuant to section 995a, subdivision (b)(1). In so concluding, we note the cases considering the language of section 995a, subdivision (b)(1) have emphasized "determining whether an omission is minor must be done on a case by case basis." (*Caple*, *supra*, 195 Cal.App.3d at p. 602; accord, *People v. Meza*, *supra*, 198 Cal.App.4th at p. 473; *Tharp v. Superior Court* (1984) 154 Cal.App.3d 215, 219, fn. omitted

[6]The People point out they requested further proceedings pursuant to section 995a in response to Morrisette's section 995 motion, but the court did not rule on their request. Such a request appears sufficient under the case law to constitute a motion for the purpose of satisfying section 995a, subdivision (b)(1). (See *Caple*, *supra*, 195 Cal.App.3d at pp. 598–599 [affirming order remanding and reopening preliminary hearing proceedings for correction of minor error where prosecution requested such proceedings pursuant to § 995a in response to § 995 motion for dismissal]; accord, *People v. Meza* (2011) 198 Cal.App.4th 468, 472, 477–479 [reversing order granting § 995 motion to set aside information and granting People's "motion" for further proceedings under § 995a, which was based upon the People's request filed in their response to § 995 motion].)

["[F]inding a bright line of demarcation to provide courts with guidelines in applying section 995a is an impossible task. We therefore join those who came before us attempting to apply section 995a to particular facts"].)

The seminal case of *Caple*, *supra*, 195 Cal.App.3d 594 held the term "minor omission" in section 995a, subdivision (b)(1) "refers to one that is *comparatively* unimportant." (*Caple*, at p. 602.) The *Caple* court reasoned "use of this meaning is consonant with the perceived legislative intent that meritorious prosecutions not be barred based upon minor omissions." (*Ibid*.) Accordingly, "an evidentiary defect will trigger the remand provisions of section 995a, subdivision (b)(1), whenever the omission is minor when considered in relation to the balance of the evidence required in order to hold the accused to answer." (*Ibid*.)

In *Caple*, the defendant was charged with possessing and transporting cocaine for sale. (*Caple*, *supra*, 195 Cal.App.3d at. p. 597.) The evidence at the preliminary hearing established the defendant was seated within a foot and a half of the cocaine (which was found behind the driver's seat) and a partially burned marijuana cigarette was found in the ashtray. (*Id.* at. p. 598.) No other evidence was offered at the preliminary hearing to connect the defendant to the cocaine. (*Ibid*.) The defendant was held to answer and subsequently moved to have the charge set aside under section 995. (195 Cal.App.3d at. p. 598.) The superior court remanded the matter to the magistrate for further hearing to allow the prosecution to introduce into evidence the accused's statement concerning ownership of the vehicle. (*Id.* at pp. 598–599.) In determining whether the alleged omission in the evidence was minor, the *Caple* court explained, "the quantum of proof needed to establish probable cause for the charged offenses must be kept in mind." (*Id.* at. p. 602.) The *Caple* court held the trial court acted properly in remanding the matter for the People to present additional evidence, reasoning, in part, "the omitted statement essentially required only one additional question and answer, it did not involve a rehearing of any of the preliminary hearing evidence." (*Id.* at p. 603.) The court noted

25.

"the evidence already in the record at the time of the trial court's remand order provided most, if not all, of the evidence needed to hold Caple to answer for the charged offenses." (*Ibid*.) In reaching its holding, the *Caple* court declined to interpret the term "minor" in the statute to require an error to be "insignificant." (*Id*. at p. 601.) The *Caple* court reasoned such an interpretation "would totally eviscerate section 995a, subdivision (b)(1), by permitting its use only when the omitted evidence was unnecessary in the first instance." (*Id*. at p. 602.) But, "the Legislature did not intend the section to be so limited." (*Ibid*.)

In *Garcia v. Superior Court*, *supra*, 177 Cal.App.4th 803, the appellate court held the trial court erred in granting the People's request to reopen the preliminary hearing pursuant to section 995a, subdivision (b)(1) for the purpose of permitting the court, sitting as a magistrate, to hear new evidence before ruling on the defendant's motion to set aside the information, which alleged a felony violation of section 148. (177 Cal.App.4th at p. 806.) The *Garcia* court concluded "the trial court erred in finding that there was a minor and expeditiously curable omission" where the preliminary hearing transcript was "devoid of any evidence establishing the core conduct, or *actus reus*, of resisting arrest." (*Id*. at p. 814.) The *Garcia* court explained the court's ruling erroneously allowed "the prosecutor to present revised testimony in order to fill an evidentiary vacuum concerning the gravamen of the offense." (*Id*. at p. 806.)

Here, the additional evidence that has now become relevant to establish the necessary showing to support the gang-related enhancements because the passage of Assembly Bill 333 was "comparatively unimportant" at the time of the original preliminary hearing proceedings. Indeed, it was not necessary then to proving the elements of the gang offense, enhancements, or special circumstance allegation. And, while the *Caple* court declined to interpret the term "minor" in section 995a, subdivision (b)(1) to mean the alleged error *must* be "insignificant" to support further proceedings under that section, we note in this instance, the omitted evidence *was* "insignificant" in

26.

that it "was unnecessary in the first instance." (*Caple*, *supra*, 195 Cal.App.3d at p. 602; see *People v. Meza*, *supra*, 198 Cal.App.4th at pp. 476–477 [court erred in denying request to reopen preliminary hearing proceedings pursuant to § 995a, subd. (b)(1) for prosecution to present evidence statute of limitations was tolled, concluding alleged error was minor in that it did not relate to any element of the offense with which the defendant was charged, involve a substantive issue of guilt or innocence, and "did not go to the heart of the case and the evidence actually offered was sufficient to establish each element of the charged offenses" and error could be remedied by taking judicial notice of court file in prior proceeding].)

Furthermore, here, the prosecution presented a significant amount of evidence at the preliminary hearing that spanned multiple witnesses and two days of evidence to support the bevy of charges and enhancements alleged against the four defendants. The additional evidence the People now must produce to support the gang-related allegations is minor "considered in relation to the balance of the evidence required in order to hold the accused to answer." (*Caple*, *supra*, 195 Cal.App.3d at p. 602.) Considering "the quantum of proof needed to establish probable cause for the charged offenses" (*ibid.*), other enhancements, and allegations at the preliminary hearing, we conclude the omitted evidence, which the prosecution now seeks to present in further proceedings, is minor. It is true the additional evidence the People seek to present will be more extensive than what was necessary in *Caple* or *Meza*. Nonetheless, the omitted proof can be "expeditiously cured or corrected without a rehearing of a substantial portion of the evidence" (§ 995a, subd. (b)(1)) when considered in relation to the bulk of other relevant evidence already presented, given the particular facts of this case. Thus, remand in this situation is appropriate under section 995a, subdivision (b)(1).

This case is unlike the situation in *Garcia*, in which the prosecutor failed to present any evidence establishing the core conduct of the gang-related allegations during the preliminary hearing. Rather, the parties do not dispute the People met their burden of

27.

establishing the requisite showing to support the gang-related allegations under the old law. Thus, reopening of the preliminary hearing proceedings in this context does not permit the prosecutor a second chance to fill "an evidentiary vacuum concerning the gravamen of the offense." (*Garcia v. Superior Court*, *supra*, 177 Cal.App.4th at p. 806.)

Furthermore, even assuming the language of section 995a, subdivision (b)(1) does not support reopening the preliminary hearing proceedings under the circumstances, the remedy we adopt is supportable as a rule of judicial procedure by application of the principles governing postconviction reversals based upon a change in the law. (See § 1260 ["The court may … if proper, remand the cause to the trial court for such further proceedings as may be just under the circumstances"]; accord, *Peracchi v. Superior Court* (2003) 30 Cal.4th 1245, 1254 [noting when error is shown, § 1260 gives appellate courts "the authority to select among several dispositions"]; see generally *People v. Gaines* (2009) 46 Cal.4th 172, 180 ["'Section 1260 evinces a "legislative concern with unnecessary retrials where something less drastic will do"'"].) While, "'[h]istorically, trial courts have been prohibited from remanding felony prosecutions to correct errors in the commitment" (*Caple*, *supra*, 195 Cal.App.3d at p. 600; *Tharp v. Superior Court*, *supra*, 154 Cal.App.3d at p. 219), here, neither party asserts error in the original commitment of Morrissette except based upon the subsequent change in the law. And, like the double jeopardy clause, the Legislature has limited the prosecutor's ability to have repeated opportunities to pursue the same charge, in part, to protect "the defendant against the harassment and risks of unnecessary repeated [proceedings] on the same charge—by the device of giving the prosecution a powerful incentive to make the best case it can at its first opportunity." (*People v. Shirley*, *supra*, 31 Cal.3d at p. 71; accord, *Burks v. United States*, *supra*, 437 U.S. at p. 11; see § 1387, subd. (a) [precluding further prosecution in most instances "for the same offense" after dismissal "if it is a felony or … a misdemeanor charged together with a felony" and the action has been previously dismissed, or "if it is a misdemeanor not charged together with a felony"]; *People v.*

28.

*Traylor* (2009) 46 Cal.4th 1205, 1209 ["A primary purpose of section 1387(a) is to protect a defendant against harassment, and the denial of speedy-trial rights, that result from the repeated dismissal and refiling of identical charges"]; *Burris v. Superior Court* (2005) 34 Cal.4th 1012, 1018 ["Section 1387 implements a series of related public policies. It curtails prosecutorial harassment by placing limits on the number of times charges may be refiled"]; see also *Burnett v. Superior Court* (1974) 12 Cal.3d 865, 873 [reopening of preliminary hearing not permitted to allow People to bolster case with additional testimony where magistrate erroneously found sufficient evidence to answer].) But, as with the double jeopardy clause, "the incentive serves no purpose when, as here, the prosecution did make such a case under the law as it then stood; having done so, the prosecution had little or no reason to produce other evidence of guilt." (*People v. Shirley*, *supra*, at p. 71.) The issue here, as in cases in which the law has changed postconviction, is not of insufficiency of the evidence. And further preliminary hearing proceedings should not be prohibited in such instances to permit the prosecution to prove new additional elements of an offense that go into effect after a defendant has been held to answer. (See *People v. Figueroa*, *supra*, 20 Cal.App.4th at p. 71 ["To say that appellant is now free of the enhancement would be to reward him with a windfall"].)

In summary, we conclude the matter should be remanded to the superior court with directions to (1) vacate the portion of the magistrate judge's holding order holding Morrissette to answer on the substantive gang charge (count 7), gang enhancement allegations on counts 1 2, 3, and 6, and the gang special circumstance, and (2) grant the People's request to reopen the preliminary hearing proceedings to present evidence on the gang-related elements added by Assembly Bill 333. Nothing in this opinion should be read to preclude defendant from being able to move to set aside the information pursuant to section 995 after the conclusion of the additional proceedings.

## DISPOSITION

Let a writ of mandate issue directing the respondent Superior Court of Kern County in case No. BF174718A to vacate the portion of the magistrate judge's order holding Morrissette to answer on the substantive gang charge (count 7), the gang enhancement allegations on counts 1 2, 3, and 6, and the gang special circumstance and to grant the People's request to reopen the preliminary hearing proceedings as stated herein. Alternatively, the prosecution may elect to proceed on an amended information without the substantive gang charge, the gang enhancement allegations, and the gang special circumstance. We do not disturb the magistrate judge's order in any other respect.

PEÑA, J.

I CONCUR:


DESANTOS, J.

30.

POOCHIGIAN, Acting P. J., Concurring and Dissenting.

I concur with the majority and the parties that Assembly Bill No. 333 (2021–2022 Reg. Sess.) (Assembly Bill 333) is retroactive to the preliminary hearing in light of *People v. Tran* (2022) 13 Cal.5th 1169, 1206–1207. I respectfully dissent from the majority's conclusion that Assembly Bill 333 does not unconstitutionally amend Proposition 21.

Section 11 of Proposition 21 increased the sentences for gang-related murder. (*People v. Lee* (2022) 81 Cal.App.5th 232, 244, review granted Oct. 19, 2022, S275449.) There are two obvious ways such a provision could be substantively amended: (1) changing the sentence applicable to gang-related murders or (2) changing which gang-related murders are subject to the increased sentences. Assembly Bill 333 directly and intentionally does the latter. Therefore, it is an amendment of Proposition 21.

Indeed, no reasonable definition of "amendment" could exclude the ways Assembly Bill 333 has changed Proposition 21. If the voters say they want "Penalty X" to apply to "Conduct Y," the definitions of both Penalty X and Conduct Y are equally integral, indispensable components to the singular policy choice they have made. Changing Conduct Y amends that choice just as changing Penalty X does. Here, Assembly Bill 333 changes the conduct subject to Proposition 21's enhanced sentences.

Proposition 21 expressly allows such amendments by the Legislature. (Prop. 21, § 39.) It only requires that they pass by a two-thirds vote of each house (or are subsequently approved by the voters). (*Ibid.*) Assembly Bill 333 did not satisfy this requirement and is, therefore, invalid insofar as it would affect Proposition 21. (*People v. Rojas* (2022) 80 Cal.App.5th 542, 557–558, review granted Oct. 19, 2022, S275835.)

The majority posits that the electorate did not "freeze" the statutory definition of gang-related murder, nor " 'preclude[] future amendments of subdivision (f) of section 186.22.' " (Maj. opn., *ante*, at p. 18, citing *People v. Lee*, *supra*, 81 Cal.App.5th at p. 243.) But no one is arguing otherwise. The voters did not preclude future

amendments, they simply required that they be passed by a supermajority. And that requirement was not satisfied here.

For these reasons, I respectfully dissent as to the Proposition 21 issue and otherwise concur in the majority opinion.

POOCHIGIAN, Acting P. J.